## JOSEPH L. AVERY
## v.
## GEORGE B. SWORDS.

*Negotiable Instruments—Note—Payment without Surrender—Agency—
Negligence—Amendment—Instructions—Evidence—Notice.*

1.   A promissory note in the hands of a third person can not be affected
or incumbered by private independent agreements between the parties
thereto.

2.   It is gross negligence on the part of the maker of a note to pay the
same without having it surrendered to him, or being certain that the pay-
ment is to the proper party.

3.   Where one of two innocent parties must suffer loss the one whose
negligence caused such loss must bear the same.

4.   In the case presented, it was improper to allow the defendant to with-
draw the general issue and file a special plea of payment, after a different
presiding judge at a former term had refused such motion.

5.   An endeavor to collect from a third person funds wrongfully collected
and withheld by him, is no waiver of the right to proceed against the
debtor who carelessly and negligently placed them in the hands of such
third person.

6.   An instruction which singles out a single important fact in the case,
is improper.

7.   An agency may be shown by the acts of the parties. The evidence in
the case presented does not show that a third person was the agent of the
plaintiff to receive payment of the note in question.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Livingston County; the
Hon. ALFRED SAMPLE, Judge, presiding.

Avery v. Swords.

Messrs. WALLACE & TERRY, for appellant.

Swords was in law bound to know that Culver was the agent of Avery, and had the right to receive this money.   Dutcher v. Beckwith, 45 Ill. 460.

A note transferred before due to a *bona fide* holder without notice can be recovered on.   Farlin v. Lovejoy, 29 Ill. 45; Calkins v. Vail, 31 Ill. 166; Murray v. Beckwith, 81 Ill. 43; National Bank of Olney v. Baird, 3 Ill. App. 239.

A special agreement between parties to a note or bill, not indicated in the note itself, can not be set up against a purchaser for value before due and without notice.   Rice v. Ragland, 10 Humph. 545; S. C., 53 Am. Dec. 737.

The presumption of law is that the assignment is *bona fide* and for value.   Persons questioning it must prove it.   Wightman v. Hart, 37 Ill. 123; Depuy v. Schuyler, 45 Ill. 306; Richards v. Betzer, 53 Ill. 466.

Messrs. STRAWN & PATTON, for appellee.

C. B. SMITH, J.   This is a suit brought on a promissory note for $560 by Joseph L. Avery, the appellant, against George B. Swords, the appellee.   The note in controversy was executed by Swords to one Joseph Morgan and assigned before due to appellant.   The record discloses this state of facts:   In 1873, appellee bought 160 acres of land from Joseph Morgan and as part payment thereof he executed three notes to Morgan, all dated February 3, 1874.

The first was for $500, due March 1, 1875; the second for $600, due March 1, 1878, and the third for $560, due March 1, 1879.

A trust deed was also executed to secure the payment of all these notes with one J. F. Culver as the trustee.   The notes and trust deed were executed at the bank of J. F. Culver in Pontiac, Illinois.

Almost immediately after this transaction Morgan moved to Wolfsborro, New Hampshire, and deposited these three notes with others and the trust deed in a savings bank, of which Avery was treasurer, for safe keeping.   On March 16,

1874, Morgan placed the first two of these notes with appel-lant as collateral security for the payment of a lot of land he bought from appellant. The last note remained in the bank subject to the order of Morgan. The first note was paid before it was due and was paid at the bank of J. F. Culver, where the note was sent by appellant at the request of Morgan, who then still owned the note. The second, or $600 note, was paid at maturity and was collected by appellant through the National Bank of North America of Boston. That bank sent it to Culver's bank for collection and it was paid by Swords in that bank. At the maturity of the last note for $560, the one now in controversy, appellant placed it in the Lake National Bank of Wolfsborro for collection. The note was protested March 4, 1879. After appellant learned of the protest he wrote Swords. Swords made no reply but took the letter to S. S. Lawrence, an attorney at law, who made this reply to Avery's letter of inquiry:

"Pontiac, March, 19, 1879.

"Joseph L. Avery:

"*Sir:* Yours of 12th inst. to George B. Swords is placed in my hands by him, with instructions to answer. He says he paid the note long ago to Morgan's agent, Joseph F. Culver. When Mr. Morgan was here he told Swords he might pay the money in at any time to Culver and he would allow a discount of eight per cent. per annum for unexpired time on all sums paid before due. A little over a year ago he paid to Culver the balance due on the mortgage to Morgan, or to Culver as trustee for Morgan, and he then released the mortgage of record. If Morgan has not got his money it is not Swords' fault. Morgan must look to Culver, his agent.

"S. S. Lawrence."

After appellant had been informed that the note was paid to Culver long before it was due, he wrote to Culver about it and in response to that letter he received the following letter:

"Pontiac, April 6, 1879.

"Joseph L. Avery:

"*Sir:* When Joseph Morgan sold his farm to Swords, I

was made trustee and notes were made payable at my office, with the agreement that upon all money paid by Swords be- fore due, he should receive a discount. This was subject to a prior incumbrance which fell due January 1, 1878, and to effect a new loan Swords had to have a clear title. He raised part of the money and applied for enough more to pay last of the Morgan notes. Out of the new loan, $1,500, after dis- charge of the prior mortgage, there was enough with the former deposit to pay off the last Morgan note, and I released the trust deed, intending to pay off the note. Being unable to sell real estate at any price, I was unable to meet my obli- gations; but if my creditors will give me a little time, I ex- pect to pay in full.

"JOSEPH F. CULVER."

Swords paid all three of these notes to Culver. The first and second notes were at Culver's bank when he paid them and he took them up. He also paid the interest on all these notes to Culver.

He swears, and it is true, that he paid the last note to Culver nearly a year before it was due, but did not get his note. Culver told him the note was in New Hampshire but that he would write and get it. Culver then released the trust deed.

Shortly after this transaction appellee asked Culver if his note had come yet and Culver told him it had not but he expected it every day. Culver, who now claims that he was acting for appellant in receiving this money, allowed nearly a year to pass before he informed Avery that he had collected the money, and then only after Avery had written him about it, and after he had closed the doors of his bank and refused payment.

Shortly after his failure in business he moved to Kansas with his family. So far as this record shows Avery did nothing more toward collecting this note until in March, 1882. He then wrote to an attorney saying he had a claim against Culver and desired him to see what could be done toward collecting it. Having received no reply to this letter he again wrote the same attorney in April following, asking for an

answer to his letter.   After the failure of this correspondence
to get anything out of Culver appellant commenced this suit.
Three trials before the Circuit Court have been had.   The
first one resulted in a verdict for the defendant.   On motion
of the plaintiff the verdict was set aside and a new trial granted.
On the second trial the jury disagreed and were discharged with-
out a verdict.   On the third trial the defendant again had a
verdict.   The court overruled a motion for a new trial and
gave judgment on the verdict for the defendant.

The case is now brought before us for review on appeal.
The long contest in the court below has induced us to give
the case a careful and patient investigation.   The appellant
urges that the court erred, first, in allowing the defendant to
withdraw the general issue and plead a special plea of payment
after a different presiding judge at a former term had refused
that motion.   Second, that the court erred in the admission of
testimony prejudicial to the appellant and also erred in giving
and refusing instructions.

The material and central fact in the controversy is whether
Culver was the agent of Avery at the time he collected the
last note from Swords.   If he was, then Swords would be
justified in paying him the note and would be discharged; but
if he was not the agent, then he had no right to collect the
money from Swords, and Swords would not be protected in
his payment.

Appellee does not claim any express or direct agency but
seeks to show such agency from the course of business and the
acts of Avery, Culver, Morgan and himself.   Of course, an
agency may be shown by the acts and conduct of parties as
well as by direct authority.

There is no claim in this record that Avery ever had any-
thing to do with or knew anything about the sale of the land
by Morgan to Swords, or the execution of the notes and deeds
and trust deed, until the notes were deposited in the bank in
Wolfsborro, and not then until two of the notes were placed
in his hands as collateral security.   Swords now relies on a
collateral agreement, made between himself and Morgan at the
time the sale was made, that Swords might pay off any or all of

these notes before they were due and thereby get a discount of eight per cent., and inasmuch as Morgan was going to New Hampshire it was agreed that the notes and trust deed should be left with Culver where Swords could go and pay them if he so desired.

This alleged agreement was made, if made at all, at the same time of the execution of the notes and mortgage, and was not put in either one of the instruments of writing. Morgan swears that no such agreement was made and that he did not make Culver his agent for collecting the notes, and that he took the notes with him to New Hampshire and never did leave them with Culver.

Swords swears there was such an agreement and that it was signed by Morgan, but that he did not sign it and did not read it.

Culver swears that it was in writing, and was assented to by both parties signing it. Suppose such an agreement had, in fact, been made and properly proven and in writing, it could not have bound appellant in any event without notice of its existence, even if it could with notice. It was no part of the notes nor the trust deed, and could in no manner change the terms of the note.

It was not assignable and could not go with the notes, nor could it hasten their maturity any more than it could extend the time of the payment. It can not be claimed with any show of reason or authority that negotiable promissory notes can be affected or incumbered with private independent agreements between the parties to them, such as is claimed in this case. Rice v. Ragland, 10 Humph. 545; S. C., 53 Am. Dec. 737.

If, by such an independent and separate agreement, the maturity of a note may be accelerated so as to bind assignees, then may the time of maturity be extended by like agreement. Nor would the agreement contended for here, that Morgan had appointed Culver his agent to collect these notes, be any more binding on an assignee for value, than an agreement to accelerate or extend the time of payment.

If that were so, it would be in the power of the payee of a

note to appoint an agent to receive payment of the note without reference to the holder or assignee of the note. All such agencies must terminate when the party making the appointments parts with his notes. The holder of promissory notes has the right to appoint his own agents to make collection.

But there is a total want of any credible proof that Avery ever heard of any such pretended agreement between Swords and Morgan. On the contrary, there is positive, reliable and uncontradicted proof that he never heard of any such pretended agreement, until he saw it in Culver's deposition. Morgan swears there was no such agreement, and that he never told Avery there was. Avery swears that he never heard of any such agreement between Morgan and Swords.

The only pretense that can be made to show that Culver was the agent of Avery, was that, when the first note was due, Avery sent it to Culver for collection for Morgan and at Morgan's request. That note did not belong to Avery, and he had no interest in it. When the other notes became due which he had bought from Morgan, he placed them both in National Banks near his home for collection, and paid no attention to Culver. The fact that these banks sent the notes, or one of them, to Culver for collection, did not make him the agent of Avery.

Without further prolonging the discussion of this branch of the case, we are satisfied that there is a total failure to prove notice of this pretended agreement to appoint Culver the agent of Morgan to receive this money or any part of it. The court erred in admitting the testimony relating to that agreement.

It was the duty of Swords before he paid this note, to have the note surrendered to him or to be sure that he was paying it to the right party. Dutcher v. Beckwith, 45 Ill. 460. He was bound to know that his note was assignable, and that the holder of to-day might not be to-morrow. It was an act of gross negligence on his part to pay the note without having it surrendered to him or being assured he was paying to the right party.

When he paid the note without receiving his note, he paid

it at his peril.  Avery did nothing to induce him to believe that Culver was his agent.  Avery was in no fault.  Swords acted in good faith, and supposed Culver would get his note from Morgan or Avery.  Culver then knew that he had no authority from Avery to collect the money, for, by his own acts and correspondence, it is evident that he did not then know Avery owned the note, for he swears that when the money was paid, he gave Morgan credit with it on the books.

It is a familiar rule that when one of two innocent parties must suffer loss, that the one whose negligence has caused the loss must bear it.

We think the court erred in setting aside the order of another judge rendered at a previous term, denying a motion made by the defendant for leave to withdraw the general issue and file a special plea of payment.  The case was first heard by the Hon. N. J. Pillsbury, and the defense was then given under the general issue.

Prior to the second trial, before the same judge, the defendant asked leave to withdraw the general issue and for leave to file a special plea of payment, which was very properly overruled by the court, and the defense was again made under the general issue on the second trial.  On the third trial, before the Hon. Alfred Sample, judge, presiding, the defendant renewed his motion for leave to withdraw the general issue and file a special plea of payment, which motion was allowed, against the objection of the plaintiff.

There could be only one purpose in view in pressing this motion upon the court and in renewing it after it had once been refused, and that was to obtain an unjust advantage over the plaintiff in securing the opening and closing before the jury, an advantage which the defendant was not fairly entitled to.  He could give evidence of payment just as well under the general issue as under the plea of payment, and hence we think the court, in the first instance, properly refused the motion.  We hold that the allowance or refusal of the motion was, in the first instance, in the sound discretion of the court.  We are not inclined to hold, as a matter of strict law, that the action of Judge Pillsbury in refusing the motion at one term pre-

cluded Judge Sample from vacating the order and changing it at a subsequent term, since the order was interlocutory only and relating to the formation of the issues in the case, but we think it is the exercise of such discretion as may be reviewed upon appeal, for abuse or improper exercise. We think in this case the order made by Judge Pillsbury was properly made, and that no sufficient reason was shown why another judge, at another term, should, vacate it and make another order directly the reverse of it.

Under our present arrangement of judicial districts, throwing three judges together and making it necessary for them frequently to preside at different stages in the same case, we think great care should be observed and respect shown to the judicial acts of the several judges, and we think they should not set aside or interfere with each other's orders and judgments, even when they be only interlocutory and where the naked power exists so to do, unless there be some reasonable necessity for so doing, in order to promote the ends of justice or facilitate its due administration.

Any other rule is liable to promote unkind and unfriendly relations and lead to confusion and retaliation prejudicial to the administration of public justice. There being, as we have seen, no necessity of any kind for setting aside the order made by Judge Pillsbury, we think the court erred in allowing defendant to withdraw the general issue and file a plea of payment, and upon a retrial of the case the court will vacate the order allowing the plea of payment to be filed and the general issue to be withdrawn, and restore the pleadings as they stood on the first and second trials. If this was the only error in the case we should not regard it of sufficient gravity to justify a reversal for that reason alone.

Counsel for appellee contend that appellant waived his right to proceed against appellee by endeavoring to collect his claim from Culver in Kansas, after Culver had moved there, or that, if he did not, in fact, thereby waive his right to proceed against appellee, he at least furnished strong presumptive evidence that he regarded Culver as his agent and real debtor, and looked to him for his money. We do not look at Avery's

conduct in attempting to get his money from Culver in that light. He knew that Swords had negligently and wrongfully paid the money to Culver which ought to have been paid to him, and that Culver had the money and ought to refund it. Culver was the culprit, cheating both Swords and Avery, and he ought not to be prejudiced in passing Swords long enough to see if he could get his money out of Culver and thus save Swords. He swears he never intended to release appellee unless he could get the money out of Culver.

It is insisted the court erred in refusing the first and second instructions asked for by the defendant. We think they were both properly refused. The first, because it omits all reference as to whether Culver was, in fact, the agent of Avery and so authorized to receive the money or not.. It simply presents the question of the relative negligence of the parties. If Culver, in fact, had the authority from Avery to collect the money, then it could make no difference how much negligence Swords may have been guilty of in paying it without getting the note, or in paying it without any inquiry as to his agency.

The second instruction was properly refused because it singled out an important and single fact in the case and told the jury they might consider that fact. This mode of instruction has been so often condemned that it is barely necessary to call attention to it, and the court did right in refusing it.

For the errors above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*