Charles J. Wolf, Appellant, v. Helen J. Brookfield et al., Appellees.

Gen. No. 7,713.

Opinion filed March 14, 1928. Rehearing denied May 1, 1928.

FRANK J. BOWMAN and H. A. BROOKS, for appellant.

CARL E. SHELDON, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

On January 8, 1925, judgment by confession was rendered in the circuit court of Whiteside county in favor of appellant and against appellees for $13,134 and costs. Said judgment was based on six promissory notes given by appellees to one Aaron A. Wolfersperger, all dated July 1, 1919, for the aggregate principal sum of $12,000, payable one year after date, with interest from date at 6 per cent per annum, payable annually. Said notes contained the usual warrant of attorney. Each of said notes was indorsed, ''Pay to Chas. J. Wolf or order 5½%. A. A. Wolfersperger,''

and bore notations showing the payment of the interest thereon each year, to July 1, 1923.

On February 3, 1925, appellees moved the court to vacate said judgment. On hearing, the court opened up the judgment, stayed execution, and granted appellees leave to plead. Appellees filed a plea of the general issue and a plea of payment, and subsequently filed notice of special defenses. A jury being waived, the cause was heard by the court, a finding was made in favor of appellees, and the judgment rendered against them was vacated. To reverse said judgment, this appeal is prosecuted.

Two principal grounds are relied on by appellees to defeat appellant's judgment: (1) That the indorsement of said notes was not of the entire instruments, and, therefore, any defenses which appellees might have had against the original payee would be good as against appellant; (2) that Wolfersperger was the agent of appellant and as such was paid by appellees the amount owing on said notes.

Section 52 of our Negotiable Instruments statute, Cahill's St. ch. 98, ¶ 52, provides:

"The indorsement must be an indorsement of the entire instrument. An indorsement which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument."

Counsel for appellant contend that, notwithstanding this provision of the statute: (1) There was in fact an assignment of both the principal and interest provided to be paid by said notes, and that the only effect of said indorsement was to require appellant to pay to Wolfersperger one-half of one per cent of the interest accruing thereon, for collecting the same. (2) Even though it be held that only a part of the interest was assigned, the obligation to pay the principal and the obligation to pay interest thereon were severable, and

that therefore appellant had a right of action against appellees on said notes, so far as the collection of the principal thereof was concerned. In support of this contention, counsel cite and rely on *Dulaney v. Payne,* 101 Ill. 325.

The question before the court in that case was as to whether a judgment in a suit instituted after the maturity of a note, for the interest accrued thereon, was a bar to a suit thereafter brought to collect the principal. The court held that an action might be maintained for the collection of interest on a note where that interest was payable at a different time than the principal, without barring a subsequent suit for the collection of the principal, and stated that the rule in that regard was not uniform. At page 331 the court says:

"In Parsons on Contracts, vol. 2, p. 636, a contrary doctrine is announced. The author says: 'One holding a note on which interest is payable annually or semi-annually, may sue for each installment of interest as it becomes payable, although the note is not yet due; but after the principal becomes due the unpaid installments of interest become merged in the principal, and must therefore be sued for with the principal, if at all.' In support of the rule announced, the author, in the note, cites *Howe v. Bradley,* 19 Maine, 31. In the case cited it was held that annual interest cannot be recovered by a separate action after the principal has become due. This decision was made by a divided court, and although it may sustain the rule laid down by Parsons, we are not inclined to follow it."

At page 333 the court further says:

"If a separate action may be maintained upon each one of several notes which grow out of a single contract, upon the same principle and for the same reason a note containing a promise to pay interest at one time and the principal debt at another, may be the founda-

tion of one action to recover the interest, and another to recover the principal.''

We do not regard this case as decisive of the question here involved. The notes here in question were all payable one year after date, and the interest was payable annually, so the principal and the interest both fell due on the same date. We are of the opinion that, inferentially, at least, the holding in *Dulaney v. Payne* is to the effect that where the principal and the interest are payable at the same time, a recovery for both should be sought in the same suit.

However, it is not a question as to whether a separate suit might be maintained for interest accruing on said notes without barring a subsequent suit to recover the principal. The statute specifically provides that ''the indorsement must be an indorsement of the entire instrument,'' which includes both principal and interest.

Under the provision of this statute an indorsement ''which purports to transfer to the indorsee a part only of the amount payable'' does not have the effect of making the indorsee a holder in due course, thereby emphasizing the statement that the entire instrument must pass by the indorsement. Giving to the statute its logical construction it means that whatever is to be paid, whether principal or interest or both, must pass to the indorsee in order to make him a holder in due course. In *Miller v. Bledsoe,* 1 Scam. (Ill.) 530, the court in discussing a question of this character at page 531, says:

''At law, a moiety, or any other portion of a promissory note, cannot be so assigned as to enable the assignee to bring an action in his own name, for his portion of the note. * * * In order, therefore, to enable an endorsee of a note to bring an action in his own name as endorsee, the whole interest in the note must be assigned to him. The interests of an assignee of part of a note, would doubtless be protected in a

court of law, but the action must be brought in the name of the payee or payees, who continue to be the legal holders of the note for the purpose of collection. The endorsement on the note, can only be regarded as a private memorandum between the payees, and only vested in Bledsoe an equitable title to the money when collected.''

The only assignment which will cut off the equities of the makers of a note is an assignment made in conformity with the statute. *Peck v. Bligh,* 37 Ill. 317; *Bouton v. Cameron,* 205 Ill. 50–68.

The next question to be determined is whether said indorsement was of the ''entire instrument.''

Counsel for appellees offered testimony to the effect that a custom prevailed among certain of the money lenders and security brokers in Sterling in the sales of notes and mortgages by them, whereby they retained a portion of the interest accruing thereon, and that an indorsement of the character here in question carried with it notice that such a transaction had taken place. Appellee also offered the testimony of John Stager, a former partner of Wolfersperger, to the effect that he was more or less familiar with the books kept by Wolfersperger and that said books contained notations of the character here involved, with reference to these and numerous other notes sold by him.

On the other hand, appellant testified, over objection of appellees: ''I paid Aaron A. Wolfersperger one-half per cent of the six per cent interest on these notes for his work.'' On cross-examination he stated: ''When I said I paid Mr. Wolfersperger one-half of one per cent for his trouble or work it was done by his keeping out one-half of one per cent of the interest and giving me a check for the difference which saved me giving it back to him and I had the same arrangements on a number of other notes endorsed in the same way.''

Without reference to the offered testimony as to the custom which prevailed in Sterling in transactions of the character here involved, the testimony of appellant clearly discloses that Wolfersperger did retain an interest in said notes to the extent of one-half of one per cent of the accruing interest. That being true, under the provisions of the statute above quoted, the indorsement not being of the entire instrument, appellant is not a holder in due course. Any defenses therefore which appellees would have against Wolfersperger, payee in said notes, would be available as against appellant.

The evidence introduced by appellees is to the effect that on November 22, 1920, Wolfersperger entered into an agreement with Lewis E. Brookfield, now deceased, who was the husband of Helen J. Brookfield, one of the appellees herein, Charles A. Davis and Hugh W. Bunn, appellees, and seven other persons, respecting a certain property referred to as the Clyde property. Said agreement sets forth the respective interests of all the parties, provides that Wolfersperger "shall hold all of said second parties' interest in said land in trust for them," and that all of the parties are to pay their proportionate share of the mortgage on the premises, interest, taxes and necessary expenses. At the time said agreement was made, the parties thereto borrowed $15,000 with which to purchase said land. This loan was renewed from time to time, and eventually Wolfersperger took up the notes which had been given to banks in Sterling, and appellees, the remaining parties interested in said property, gave Wolfersperger their notes for $15,000. Seven notes were given, six of which are the notes here in question.

On November 21, 1922, Wolfersperger sold a portion of the Clyde property to one H. C. Goelitz for $33,500, and thereafter rendered to appellees a statement of his receipts and disbursements in connection with the property, showing that the loan thereon, with

interest, had been paid out of the proceeds of the sale. Appellees all testified that, after November 21, 1922, no demand was ever made on them for either interest or principal on any of said notes until the same were placed in judgment as above stated.

That there had been a sale of said property, and that appellees, in the settlement therefor, had been charged by Wolfersperger for the amount necessary to pay said notes is clearly disclosed by the evidence. This is practically conceded by counsel for appellant. Therefore, if Wolfersperger or his personal representative were seeking to recover on said notes, appellees would have a complete defense to the action. That being true, under our holding that the indorsement did not comply with the statute, such defense would be good as against appellant.

Appellees further insist that Wolfersperger was the agent of appellant, and, as such, was authorized to collect the interest and the prinicpal on said notes.

In his direct examination, appellant denied ever having left the notes in question or other notes with Wolfersperger for collection. However, on cross-examination, on being presented with receipts signed by him, he admitted that he was probably mistaken in reference thereto. He testified:

"I guess I must have on January 28, 1921 left with Mr. Wolfersperger for collection the W. K. Farley notes aggregating twelve thousand dollars, the Louis R. Steffe notes aggregating $3,500.00, the Jack Warner notes aggregating $5,000.00, the Harry Keisler notes aggregating $2,000.00, the Werle notes aggregating $2,000.00 and the A. A. Wolfersperger note aggregating $1,000.00. * * * In Defendants' Exhibit 14 where it states I have received from A. A. Wolfersperger $26,000.00 to apply on the notes left for collection may be true. * * * Looking upon this paper, Defendants' Exhibit 15, dated September 27, 1919, I guess I must have taken his receipt for $20,000.00

to loan on real estate security on that date. I took Mr. Wolfersperger's personal notes for large amounts of money at various times and was doing quite an extensive business with him and in all these transactions never came in contact with the persons who signed the notes any more than I would with Davis, Brookfield and Bunn. My dealings were entirely with Mr. Wolfersperger covering a period of the last twenty years. The total of those transactions I don't think amounted to two or three hundred thousand dollars. I would say it was about one hundred thousand dollars.''

He further testified: ''I bought these notes on June 1, 1920. I am pretty sure I brought them to Wolfersperger's office on July 1, 1920. * * * I wouldn't say I took them there just on that day July 1st. Sometimes I took them there on interest dates and sometimes shortly after. * * * I knew this note was due July 1, 1920 and knew where it was payable. If I was not there on July 1, 1920 I intended he would keep the money and it should be turned over to me. If the makers saw fit to pay the notes in full upon the date they were payable I expected them to leave the money with Wolfersperger. Wolfersperger knew that I knew that I had that understanding with Wolfersperger.''

Counsel for appellant, however, contend that, even though Wolfersperger was acting as the agent of appellant at the time of the alleged payment, he was also the agent of appellees in the sale of the Clyde property, and if he was acting as the agent of both parties, such agency should not bar appellant's right of recovery on his notes. We are of the opinion and hold that this point is well taken. *McDaniel v. Continental Casualty Co.,* 240 Ill. App. 535–548.

It is also insisted by counsel for appellees that the filing and allowance of the claim of appellant against the estate of Wolfersperger in the county court is a

bar to appellant's right of recovery in this case. This point is not well taken. *Avery v. Swords*, 28 Ill. App. 202–210.

Other errors are assigned by appellant, which are based upon the assumption that there was a valid and legal indorsement and negotiation of the notes to him. It will not be necessary to discuss these errors, as we are affirming the judgment on our holding that said notes were not legally indorsed and negotiated, and that appellant never became the holder of the same in due course.

For the reasons above set forth, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

MR. JUSTICE JONES dissenting: In my judgment, the evidence shows that Wolfersperger retained no title to the notes he assigned to Wolf. He was in fact a broker of notes. At various times, he negotiated a large number of them to appellant, aggregating almost $100,000. In nearly every instance, there was an actual physical delivery of the notes to appellant, but as a general rule, they were afterwards returned to Wolfersperger for collection. When appellant did not take physical possession of any note purchased by him, it was left with Wolfersperger only for collection. In my opinion the record does not justify the conclusion that Wolfersperger intended to transfer to appellant the title to a major portion of each note and retain in himself title to the remainder. To the contrary, it appears that appellant took the entire title and agreed to pay Wolfersperger a fixed amount for services to be performed later. Wolfersperger's possession was not that of an owner, but of an agent of appellant with power to collect both principal and interest. He was allowed to retain one-half of one per cent of the interest he collected, as compensation for his services. If he collected no interest he could receive nothing. He

had no claim on the principal. He could bring no suit against the maker of the note, either in law or in equity. He retained no title to any note or to any portion thereof. If his interest was merely a right to receive compensation, and did not in any way affect the title to the notes, or limit their assignments, then appellant must be deemed a holder in due course and should recover in this case.