# CHARLESTON.

RUMSEY *v.* LAIDLEY.

*(LUCAS, PRESIDENT, absent.)

Submitted January 17, 1891.—Decided February 7, 1891.

1. COLLATERAL SECURITY—FAILURE TO ENFORCE COLLATERALS—LACHES.
Where a party who is indebted executes his notes to his creditor payable at different times, and subsequently assigns and transfers non-negotiable notes which he holds against other parties to said creditor as 'collateral security for the payment of his notes held by said creditor, it is the duty of such creditor to use reasonable care and diligence to make said notes, received as collateral security, available, and if by negligence or laches on his part said collaterals or any of them are lost, the loss should be borne by such creditor.

2. COLLATERAL SECURITY—FAILURE TO ENFORCE COLLATERALS—LACHES.
A note for five hundred dollars against two parties was assigned by a debtor to his creditor as collateral security for a pre-existing debt. One of the makers of said note was dead at the time said note was assigned, and it was on file before a commissioner in a creditors' suit to settle said deceased maker's estate. Nothing was ever done by said creditor to hasten the collection of said note against either of the makers thereof, but said creditors received one hundred and ninety one dollars and seventy cents from said creditors' suit twenty years after said transfer was made. In a suit brought by said creditor upon said orginal indebtedness, *held*, that said creditor had not used that diligence which the law requires with reference to the collection of said collaterals, and that said debtor was entitled to charge said creditor with the amount thereof.

*On account of illness.

*Simms & Enslow* for plaintiffs in error, cited 2; Rob. (Nav.) Pr. 272; 3 Gratt. 127; 2 Wash. 229.

*W. S. Laidley* for defendant in error, cited Coleb. Coll. Sec. § 425; 16 W. Va. 721; 13 W. Va. 718.

English, Judge:

George S. Laidley, being indebted to James M. Rumsey, Josiah Roads, and Joseph G. Reed, partners doing business as Rumsey, Roads & Reed, executed to them four notes, all dated the 4th day of November, 1867—one for six hundred forty six dollars and thirty six cents, payable ninety days after date, to their order, at their counting-room, Portsmouth, Ohio; one for one hundred eighty one dollars and fifty cents, payable thirty days after date, to their order, at the same place; one for one hundred and eighty two dollars and forty cents, payable sixty days after date, to their order, at their said counting-room; and another for one hundred thirty dollars and sixty eight cents, payable to their order sixty days after date, at their counting-room aforesaid.

On the 14th day of April, 1868, the following paper was signed by said firm of Rumsey, Roads & Reed and said George S. Laidley: "Received of Mr. George S. Laidley, as follows: His claim of a certain note of John Morris and James R. Morris, to order of C. T. Everett, dated Dec. 1, '61, payable on or before Jan. 1, '64, calling for ($500) five hundred dollars, and drawing interest from its date, accompanied with a copy of said note certified by Jos. S. Miller, master commissioner, Circuit Court, Cabell county, W. Va., said document being indorsed by George S. Laidley; also a note of A. C. Handley to order of and indorsed by John Laidley, Jr., and indorsed by George S. Laidley, also dated April 6, '68, and payable on or before July 1, '68, calling for three hundred dollars ($300.) The condition of this receipt is that the proceeds of the same, when collected, are to be applied to the said George S. Laidley's indebtedness to us; he to indemnify us for all costs and expenses in the collection of the same, and we to return to him all that may be over and above the said Laidley's in-

debtedness to us, and he to make good to us any deficiency in the same."

On the 5th of January, 1876, James M. Rumsey inclosed to said George S. Laidley a statement showing that four hundred and four dollars and seven cents had been collected as proceeds of the Handley note assigned to said Rumsey, Roads & Reed, upon the condition mentioned in the above receipt, which had been applied in extinguishment of said Laidley's note for one hundred and eighty one dollars and fifty cents, dated November 4, 1867, and also in extinguishment of his note for one hundred and eighty two dollars and forty cents, dated November 4, 1867, and the interest on same twenty nine dollars and fifty nine cents, aggregating three hundred and ninety three dollars and forty nine cents, leaving a balance of ten dollars and fifty eight cents, which was applied as a credit on said Laidley's six hundred forty six dollars and thirty six cents note held by said Rumsey, Roads & Reed.   On the 2d day of June, 1875, said firm of Rumsey, Roads & Reed brought an action of *assumpsit* in the County Court of Cabell county against said George S. Laidley on said note for six hundred and forty six dollars and thirty six cents, executed by said George S. Laidley, and payable to their order ninty days after date, which note bears date November 4, 1867 ; which action was subsequently transferred to the Circuit Court of said county.   The defendant demurred to the plinitiff's declaration which demurrer was sustained, and on leave the plaintiff amended their declaration, and the defendant again demurred, and his demurrer to the amended declaration was overruled ; and on the 14th day of May, 1890, the parties waived a trial by jury, and the questions of law and fact arising on the issues therein were submitted to the judgment of the Court in lieu of a jury ; and the Court, having heard the evidence, found for the plaintiffs, and assessed their damages at two hundred dollars and seventy cents and rendered judgment for that amount, with interest thereon from the 15th day of May, 1890, until paid, and costs. ,  ·

The following facts were agreed to by the parties, which were submitted to the court: "There was pending in the Circuit Court of Cabell county a creditors' bill against the

estate of Morris, the maker of the five hundred dollar note, spoken of in the above receipt or agreement in 1868, at the time when that agreement was entered into. The original note was on file in that suit as a charge against the estate of Morris at the time of the transfer spoken of. Out of the proceeds of the sale of the Morris estate was realized by the plaintiffs one hundred ninety one dollars and seventy cents in 1888, which was credited on the six hundred forty six dollars and thirty six cents note. Said suit is still pending in the Circuit Court of Cabell county, and this amount was all that was ever realized or could be realized from the Morris estate. The plaintiffs took no steps at any time to collect or attempt to collect said five hundred dollar note, or any part thereof, from C. T. Everett, the payee and indorser thereof in his lifetime, or against his estate after his death. C. T. Everett died in 1867, leaving an estate amply sufficient to pay off the whole of said note. In 1872 his executor disbursed and distributed his estate to his children. In 1888, when the Morris estate was finally cleared up and settled, the estate of C. T. Everett had been so completely wound up and distributed that nothing remained of said estate that had not passed into the hands of his children."

These were all the facts before the court, and the court found that the one hundred dollars, the one hundred eighty one dollars and a half, and one hundred eighty two dollars and forty cents notes had been paid by the defendant; and that the six hundred forty six dollars and thirty six cents note, with its interest, was due to the plaintiff from the defendant, subject, however, to be credited with the full amount of the five hundred dollar note first spoken of in said agreement, with interest, which left a balance due on said note of one hundred and forty dollars; also that the plaintiffs were entitled to a reasonable fee for making collection, which the court fixed at one hundred and thirty dollars, making the whole amount of recovery in favor of the plaintiffs, two hundred and seventy dollars; to which rulings and findings of the court the plaintiffs excepted, and moved the court to set aside the said rulings and judgment, and grant them a new trial, which motion the

court overruled, and entered judgment upon said finding for said sum of two hundred and seventy dollars, and the plaintiffs applied for and obtained this writ of error.

The question presented for our consideration in this case is whether the plaintiffs in error used that diligence which the law requires of them with reference to the collaterals placed in their hands by George S. Laidley. As to the note against Handley, the money was collected on it and applied as a payment on said Laidley's indebtedness to the plaintiffs in error, but as to the note against John and James R. Morris, which was payable to the order of C. T. Everett, and which was by said Everett assigned to said Laidley, the plaintiffs in error, so far as the record discloses, used no diligence, and made no exertion of any kind whatever, to secure its collection. The note appears to have been executed by two parties, John Morris and James R. Morris, and it appears that at the time of its assignment to the plaintiffs in error it had been filed before Master Commissioner JOSEPH MILLER, as a claim against the estate of John Morris, who was then dead, and whose estate was in process of administration; and it appears that in 1888, twenty years after the date of the assignment, the plaintiffs in error realized one hundred and ninety one dollars and seventy cents out of the assets of said John Morris' estate, and applied it as a credit on said note for six hundred and forty six dollars and thirty six cents. What they did towards hastening its collection does not appear, but it is not reasonable to suppose that, with the use of anything like ordinary diligence, such a delay should have occured. We do not find in the record a copy of said Morris note, but it is described in the receipt aforesaid as signed by John Morris and James R. Morris, and payable to the order of C. T. Everett, on or before the 1st day of January, 1864, calling for five hundred dollars, and drawing interest from date. It does not appear to have been a negotiable note, but an ordinary promissory note, payable to the order of C. T. Everett. It was shown that one hundred ninety one dollars and seventy cents was all that ever was realized or could be realized from John Morris' estate after a delay of twenty years, but it was not shown that the plaintiffs in

error ever did anything to speed the cause, or that they ever employed an attorney to look after their interests in said suit, although the defendant in error agreed to indemnify them for all costs and expenses in the collection of the same; and, although James R. Morris appears to have been a joint maker of said note, no excuse is offered for not pursuing their remedy against him. He is neither shown to have been dead or insolvent during all this time, and yet no suit was brought against him, or reason assigned for not doing so.

The plaintiffs in error had the right to withdraw said note from the file by leaving a certified copy in its place, and to have brought a proper suit against James R. Morris, but no steps of any kind were taken to enforce its collection. The record nowhere shows that the defendant in error ever had any notice of the insolvency of the estate of John Morris. Said note for five hundred dollars was filed with the commissioner at the time it was assigned to plaintiffs in error by George S. Laidley, and it way have been so filed by C. T. Everett before the same was assigned to said Laidley for anything that appears in the record to the contrary. The plaintiffs in error not only did nothing themselves toward the collection of said note from the Morrises, but gave the defendant in error no notice of their insolvency or of their failure to collect said note until the estate of C. T. Everett had been administered and distributed, and nothing was left out of which said Laidley could realize said note from his immediate assignor, and then they assert and press their original claim against said Laidley.

Did the plaintiffs in error treat the collaterals which had been placed under their management and control by assignment in such a manner as would entitle them, under the law, to return the uncollected collateral to Laidley, and recover on their original claim? In Coleb. Coll. Sec. § 442, p. 596, the author says: "The pledgee of non-negotiable choses in action is required to exercise reasonable care and diligence in their collection," citing *Whitteker* v. *Gas Co.*, 16 W. Va. 717. And in the conclusion of the same section the author says: "The pledgee, however, is answerable for the face value of non-negotiable collateral

securities, where they are lost by reason of his inexcusable default, although such loss is not presumed from mere non-collection;" citing 41 Ind. 204, where, in the case of *Reeves* v. *Plough,* it was held that "the holder of such collaterals is answerable for reasonable, but not extraordinary, diligence in their collection;" also that, "if collaterals are lost for want of reasonable diligence, the creditor holding them must account for the amount, but such loss can not be presumed from the mere fact of their remaining uncollected;" and that "if collaterals are held to secure the payment of a note, and before judgment on the note there has been payment on the collaterals or such want of diligence in collecting the same as to make the holder responsible for the amount of them, this will constitute a defence to an action on the note, and it can not be set up afterwards as a payment of a judgment on the note."

In the case of *Bank* v. *Kimberlands,* 16 W. Va. 555, Kimberlands gave the bank an order on the Wellsburg Manufacturing Company for a certain sum of money as collateral security for his indebtedness to said bank, and in that case, seventeenth section of the syllabus, this Court held that, "if such order was received as collateral security for a debt, it would be the duty of the payee to use reasonable care and diligence to make it available, and if by negligence, wrongful act, or omission on his part loss was sustained on this order, such loss should be borne by the payee."

Also in the case of *Whitteker* v. *Gas Co.,* 16 W. Va. 721, the Court held it to be "well settled that, when a chose in action, such as a bond, note, or accepted order on a third person, is transferred and delivered to a creditor as collateral security for the debt, it is the right of the debtor to sue upon such chose in action at law, and, if necessary, to use the name of the legal owner of such chose in action; and it is his duty to use reasonable care and diligence to make it available; and if, by negligence or wrongful act or omission on his part, loss is sustained on such chose in action such should be borne by the creditor."

See also, *Wakeman* v. *Gowdy,* 10 Bosw. 208, where the court held that "a creditor receiving from his debtor as collateral security a promissory note made by a third per-

son, past due, with the request to collect and apply the proceeds to the payment of the debt, though without any express direction to sue upon it, incurs the obligation to use diligence in its collection, and to sue, if necessary. In such case the debtor stands in the relation of guarantor for the collection of the note, and is entitled to the exercise on the part of the holder of such diligence as is required of a bailee for hire or of a pledgee." And in case of *Slevin* v. *Morrow*, 4 Ind. 425, it was held that "a creditor who receives the notes of third persons properly indorsed to him as collateral security for a debt, knowing the makers to be in doubtful circumstances, is bound to use reasonable diligence to collect them, or show some excuse for not doing so, but extraordinary diligence is not required. If the creditor, through his laches, fails to realize the money on the notes, the debtor has the right to treat the notes as a satisfaction, so far as they go, of the debt;" and that "the finding of the court, sitting as a jury, is conclusive, in the absence of a clear preponderance of evidence." See, also, *Roberts* v. *Thompson*, 14 Ohio St. 1; Powell's *Adm'r* v. *Henry*, 27 Ala. 612; Brandt, Sur. 519; *Kemmerer* v. *Wilson*, 31 Pa. St. 110. See, also, *Laurence* v. *McCalmont*, 2 How. 427, where it is held that "the question whether or not the guarantor had sufficient notice of the failure of the principals to pay the debt was a question of fact for the jury;" and that, "where notes are deposited for collection by way of collateral security for an existing debt, the case does not fall within the strict rule of commercial law applicable to negotiable paper. It falls under the general law of agency, and the agents are only bound to use due diligence to collect the debts." See, also, Edw. Bills, p. 242, § 344; also section 618, p. 446. See, also, *Word* v. *Morgan*, 5 Sneed, 79.

The question in this case, whether the note against the Morrises, which was assigned as collateral to the plaintiffs in error, was lost by their negligence, or want of ordinary attention and vigilance on their part, and the degree of negligence which would fix their liability, must be determined upon the facts of each particular case, in view of the general rules upon the subject; and, where the case is presented to a jury, the questions of fact are to be by them

determined; and where, as in this case, the court is substituted in lieu of a jury, they are to be determined by the court; and, as we have seen in the case of *Slevin* v. *Morrow*, *supra*, the finding of a court, sitting as a jury, is conclusive, in the absence of a clear preponderance of evidence.

In the case of *Nutter* v. *Sydenstricker*, 11 W. Va. 535, p't 5, syll. it was held: "In a case tried by the court in lieu of a jury, the plaintiff in error must be regarded as a demurrant to the plaintiff's evidence; and the judgment of the court below will not be reversed, unless it is plainly erroneous." In p't 4, same case it was held: "Upon a writ of error to a judgment rendered by the court under such circumstances, the inquiry by the appellate court is, was there sufficient legal evidence before the court below to sustain the judgement?" In that case the writ of error was obtained by the defendant in the court below, and the same rule would apply where the plaintiff below is the plaintiff in error.

In *Abrahams* v. *Swann*, 18 W. Va. 275, this Court held: "When a case is tried by the court in lieu of a jury, it is not an error for which the appellate court will reverse to hear illegal testimony. * * * In such case the party excepting must be regarded as a demurrant to the evidence, and the judgment of the court below will not be reversed, unless it is plainly erroneous."

Applying these rulings and principles to the case under consideration, I am of opinion to affirm the judgment of the court below, and the plaintiffs in error must pay the costs of this writ, and damages, as required by law.

AFFIRMED.