# CHARLESTON.

KANAWHA NATIONAL BANK OF CHARLESTON *v.* JOHN B. HARRIS *et al.*

Submitted May 6, 1924.   Decided May 13, 1924.

PLEDGES—*Bank Held Not Liable to Pledgors of Assigned Note for Failure to Collect When Due or Notify its Maker of the Pledge.*

A. H. and S., having an option to purchase certain lands, enter into a written agreement with J., transferring to him their right, title and interest therein and providing that J., as Trustee, shall take and hold title to the lands with full power

96 W. Va.

to control, manage and sell the same and out of the proceeds of sale to pay the purchase price therefor, reimburse himself for monies advanced on the property, and retain the remainder of the lands and proceeds for the joint use and benefit of the parties to the agreement in the proportion of one-half to J. and one-sixth each to the others. Thereafter on the same day all the parties assign to a bank their interests in the land and the proceeds from its proposed sale to secure the respective indebtedness of each to the bank; and later J. sells and conveys the property to A., accepting for the deferred purchase price A's non-negotiable notes, secured by a deed of trust on the property, payable to J., Trustee, one of which, in the sum of $15,000, he delivers to the bank pursuant to the assignment At the request of J. the bank delays collection of the note for nine months when he, without its knowledge, accepts from A. new notes in lieu of the originals. A. having no knowledge of the bank's interest in the $15,000 note, and the deed of trust securing the original notes having been lost before recordation, executes a second deed of trust to secure the new notes. *Held:* There is no liability on the bank to A. H. and S., or any of them for its failure to collect the $15,000 note or to notify A. of its interest therein prior to the execution and delivery of the new notes and deed of trust, which resulted in canceling this note, its value not having been affected by the delay.

Error to Circuit Court, Greenbrier County.

Action by the Kanawha National Bank of Charleston against John B. Harris and others. Judgment for defendants, and plaintiff brings error.

*Reversed and rendered.*

*Price & McWhorter, Poffenbarger, Blue & Dayton,* and *Harry V. Campbell,* for plaintiff in error.

*Chas. S. Dice* and *G. Gilmer Easley,* for defendants in error.

LITZ, JUDGE:

The plaintiff prosecutes this writ of error to the judgment of the circuit court of Greenbrier county against it in favor of defendants for the sum of $2433.19. The judgment was rendered upon the finding of the court, acting in lieu of a jury, in sustaining a claim of off-set filed by defendants. In December, 1920, the plaintiff served the defendants with

notice of motion for judgment under Section 6, Chapter 121, Code, upon two promissory notes bearing date July 31, 1914, executed by the defendants and A. C. Scherr (now deceased) as makers; one being for $4460.00 and the other in the sum of $750.00 negotiable and payable to the plaintiff ninety days from date.

The defendants, after pleading the general issue to the notice, filed a special plea confessing liability on the notes, but averring by way of set-off that they had been given in renewal of notes evidencing an indebtedness by the defendants and A. C. Scherr to plaintiff existing on May 17, 1913, at which time the defendants and A. C. Scherr, as parties of the first part, and one A. E. Johnson, Trustee, as party of the second part, entered into a trust agreement and assignment with plaintiff as party of the third part, whereby the defendants, Scherr, and Johnson, Trustee, assigned to the plaintiff as collateral security for the payment of said notes, and certain contemplated debts of Johnson, Trustee: (1) all of their several rights, titles and interests in and to a tract of land situated in the counties of Rockingham, Augusta, Albemarle and Green, in the Commonwealth of Virginia, known as the ''Mount Vernon Tract'', containing about 24,000 acres, and mineral rights in certain other tracts of land in said State, containing about 1500 acres, the legal title to which land and mineral rights was then vested in Johnson, as Trustee for the benefit of himself, the defendants, and Scherr; and (2) their respective interests in the proceeds accruing to them from a proposed sale of the said land and mineral rights; with the stipulation, however, that the liability of the interest of each in the property assigned should not exceed the amount of his indebtedness to the plaintiff.

The plea further avers that on the 22d day of August, 1914, Johnson, Trustee, sold and conveyed the said land and mineral rights to one, John A. Alexander, receiving in payment therefor certain non-negotiable interest bearing notes made by Alexander on that date, payable to A. E. Johnson, Trustee, and secured by a deed of trust on the said land, executed contemporaneously therewith by Alexander and wife to G. C. Osborne, Trustee; that for the purposes of the

said trust agreement and assignment Johnson, Trustee, there-
upon delivered to the plaintiff one of these notes, for $15,000,
payable November 22, 1914; that this note, owned by Johnson
and his associates in the proportion of one-sixth each to the
defendants and Scherr and one-half to Johnson, was then
good, valid and collectible; that defendants had no knowledge
of the sale by Johnson to Alexander of the land and mineral
rights or of the delivery by the former to the plaintiff of the
note as such collateral security until many months after the
note became due and payable; that thereafter, August 24,
1915, Johnson, Trustee, without the knowledge or consent of
defendants, while the said note was so held by the plaintiff,
accepted new notes executed by Alexander in renewal and in
lieu of certain of the original notes, at which time Johnson
delivered to Alexander his signed and sealed agreement to
protect the latter against the original notes; that on or about
December 5, 1915, Johnson died insolvent, leaving a will by
which certain persons were named his executors, from whom
Alexander obtained a deed, December 17, 1915, purporting to
release the deed of trust securing the original notes, and that
Alexander also obtained from G. C. Osborne, Trustee, a similar
release; that the defendants have acquired and now own the
one-sixth interest in the $15,000 note originally held by A. C.
Scherr; that the plaintiff on receiving the note as such col-
lateral security, did not notify the maker of its interest there-
in until 1916, nor demand payment when it became due, and
otherwise failed to exercise due and proper diligence to pro-
tect and collect the same, by reason whereof the said note has
become worthless and unenforcible; and that therefore de-
fendants set up and claim against and from plaintiffs for
their portion of said note, with interest, the sum of $11,287.50.

It appears from the record that for several years prior to
May 17, 1913, the defendants and A. C. Scherr, through an
option to purchase the above mentioned lands held by J. Yost,
Trustee, had been attempting to sell the same. The three then
owed the plaintiff bank two joint notes in the sums of $4460
and $750, respectively, for money borrowed from it and used
in the venture, in renewal of which notes those sued on were
given. On that date the defendants and Scherr entered into

a written agreement with A. E. Johnson, assigning and transferring to Johnson all their right, title and interest in and to the lands, including the right to purchase the same; it being provided in the contract that Johnson, as Trustee, should take title to the lands, and "hold, use and manage the same to the best advantage, having full power and authority to sell any or all of the same upon such terms as to cash or credit as to him may seem advisable, and at such times as to him may seem proper, *and in all things may use, occupy and manage the said lands and all parts thereof as if the same were held by the said Johnson as his individual property"*; and that after payment, from the proceeds of the lands, of the purchase money therefor, and any sums advanced by Johnson thereon, he "shall and will hold any remnant of the said lands in his hands *and any and all purchase money, obligations, and income of any kind therefrom,* for the joint use and benefit of the parties to this agreement, in the proportions of one-half to said Johnson and one-half to the said parties of the first part", defendants and Scherr.

On the same day the defendants and Scherr, parties of the first part, Johnson, Trustee, party of the second part, and plaintiff, party of the third part, also entered into a verbal contract, thereafter reduced to writing, whereby the parties of the first and second parts granted and conveyed unto the plaintiff, party of the third part, their several rights, titles, and interests in and to said lands and the proceeds from the sale thereof, to the extent and for the purpose of securing the respective indebtedness of each to the plaintiff bank; the agreement requiring the proceeds from the sale of the lands to be deposited with the bank for the purpose of application under the two contracts.

Johnson, as Trustee, having thereafter obtained from J. Yost, Trustee, legal title to the lands, on August 22, 1914, sold and conveyed the same to J. A. Alexander, accepting from Alexander as evidencing the deferred purchase price several non-negotiable notes secured by deed of trust on the property executed by Alexander and wife to G. C. Osborne, Trustee. One of the notes, for $15,000, due and payable November 22, 1914, prior to maturity was delivered by Johnson to the plaintiff bank, presumably as collateral security pur-

suant to the last above agreement. Each of these notes, dated August 22, 1914, and payable to A. E. Johnson, Trustee, recited that it was "secured by a deed of trust of even date on the Mt. Vernon tract of land in Rockingham, Augusta, Albemarle, and Green counties, Virginia, containing about 24,000 acres."

On December 5, 1914, Johnson wrote the bank stating that although the $15,000 note on its face was due November 22, 1914, the deed of trust securing it provided for thirty days grace; and further advising that the maker, Alexander, desired an extension of sixty days, "in which to complete his arrangements for cash payment in full which I granted him."

In another letter to plaintiff, January 15, 1915, Johnson states:

> "In answer to yours of January 6th, will say my deed is in Rockingham County where it was left with my man on the little unsold portion of the Mount Vernon property, about 400 acres. The deed makes me trustee for A. C. Scherr, John B. Harris, and S. M. Austin and refers to contract. This contract recites that the property is held by me as my own, to sell all or any part, keep all or any part, and after selling, or leaving, or operating so as to pay for the property, and to pay me my money back with its interest and expenses in and about the management of the property, one-half of the residue is mine and one-half the property of the said A. C. Scherr, John B. Harris and S. M. Austin."

February 2, 1915, he again wrote the bank:

> "I have just returned from Rockingham, Virginia, and Mr. Alexander has been delayed by snow in his surveying of a large portion of the land he has resold, and he claims it is impossible to raise his money in Staunton and is begging another delay of thirty days. In the snow and bad weather I know he is correct. His cash payment when the survey is completed will pay all that will come to us."

June 1, 1915, he further advised plaintiff by letter that Alexander had promised to pay the note some time later, and that:

> *"I can not afford to press him. He has helped me in my effort to sell the remainder of the property and if we*

*succeed it will be very much to our benefit.* I am sorry
but it is the best I can possibly do.''

Alexander not having been notified by the bank of its in-
terest in or custody of the $15,000 note, on August 15, 1915,
for the purpose of obtaining further time, executed and de-
livered to Johnson new notes in lieu of the originals. Ad-
vising Alexander that the old notes were on deposit in bank
for safe-keeping and promising promptly to secure and sur-
render the same, Johnson then signed and delivered to Alex-
ander a writing setting forth the execution of the new notes
in lieu of the originals and releasing him from liability under
the latter.

On or about December 5, 1915, Johnson died, leaving a will
by which certain persons were named his executors. The
deed from Johnson to Alexander, of August 22, 1914, and the
trust deed from Alexander and wife to G. S. Osborne, Trustee,
of that date, having been misplaced by Johnson before their
recordation, on December 17, 1915, a new deed was executed
by Johnson's executors to Alexander for the lands, and in
turn Alexander and wife executed a deed of trust on the
property to secure the new or substituted notes. Some years
later the original deed of trust was discovered and, in 1920,
released by G. C. Osborne, Trustee. None of the original
notes were ever returned by Johnson, but his executors de-
livered to Alexander all of them except the one in question.
In November, 1915, the bank placed this note with attorneys
for collection. It was found to be unenforcible, however,
on account of having been cancelled by Johnson's acceptance
of new notes and his failure to record the deed of trust
securing it. After the institution of this suit the interest of
A. C. Scherr in the note was assigned by his personal repre-
sentative to the defendants.

The circuit court sustained the defendants' contention that
the bank is liable to them for one-half of the $15,000 note,
with interest thereon. For this contention defendants rely
upon the rule requiring the pledgee of collateral securities
to exercise for the protection of the pledgor reasonable care
and diligence in preserving the value of the pledge, so that
the same may not become unenforcible through the interven-

tion of the makers' insolvency, the bar of the statute of limitations or other legal obstacles. 21 R. C. L. 667; *Rumsey* v. *Laidley*, 34 W. Va. 721, 12 S. E. 866, 26 Am. St. Reps. 935.

The failure of the bank to collect the note or notify the maker, Alexander, prior to the substitution of the new notes on August 15th, 1915, is charged to be such negligence on its part as will, under the rule stated, justify the judgment complained of. This theory is wholly untenable. Johnson, who possessed full power and authority in the premises to act for his associates, the defendants and Scherr, was responsible for the plaintiff's delay to enforce payment of the note. Being in command, his requests for extension of time to Alexander, for the benefit of himself and associates, were naturally granted by the bank. There was certainly no obligation on it, under the circumstances, to protect the defendants and Scherr against the possible acts of Johnson on whom they had conferred such absolute power and authority in the management and control of their interests in the property. The value of the note was not affected by reason of the delay. It was as enforcible when cancelled by Johnson August 15th, 1915, as at the time of its execution. The extension of time to Alexander by renewal of the old notes was doubtless necessary as Johnson thought in carrying through the scheme of reducing the lands to money. This act in no wise prejudiced the rights of defendants or Scherr. They had their interest in the new notes which had been substituted for the old ones. The bank was the only one injured. It lost the benefit of the $15,000 note as collateral.

The judgment of the lower court will therefore be reversed, its finding set aside, and judgment entered for the plaintiff against defendants in the sum of $5210.00 with interest thereon from October 30th, 1914.

*Reversed and rendered.*