# CHARLESTON.

York, *Adm'r. v.* Railway Officials and Employes Accident Association.

Submitted January 14, 1902.   Decided March 8, 1902.

1. Insurance Policy—*Premiums—Payment—Beneficiary.*

    A paymaster's order, given by an employe of a railway company to an insurance company, for the payment, out of the wages of the employe thereafter to be earned, of an insurance policy premium in installments, reciting that the assignment is "in lieu of payments," and containing a clause whereby the insured agrees that failure from any cause to deduct from his wages any of the installments shall be at his risk and effect a forfeiture of all rights of himself and his beneficiary under the policy, and waives, for himself and beneficiary, notice of the payment or non-payment of the premium, is not equivalent to payment of the premium, although delivered by the insurance company to the paymaster of the railway company and filed in his office; and if, after it is so filed, the employe continue in the service of the railway company and earn wages continuously until the time of his death by accident, but, by inadvertance, the premium is not deducted, and he draws all his wages and the premium is not actually paid, no recovery can be had on the insurance policy, when the policy and application therefor make the order a part of the policy and contract.   (pp. 40,41).

2. Premium—*Payment—Installment—Presumption.*

    When, in such case, the paymaster of the railway company testifies that no deductions from the wages of the employe were made under the order, and the proper officer of the insurance company testifies that the premium was not paid, the mere fact that there were found in the possession of the deceased checks of the railway company for amounts less than his monthly wages, but the amounts of the checks are such that the addition thereto of one or more of the premium installments would not make the amount of the wages for any month of service, is not sufficient to raise a presumption of payment

nor of deductions having been made, and will not support a verdict for the plaintiff. (pp. 42, 43).

3. PREMIUM—*Payment—Circumstances.*

Such fact would be competent and sufficient evidence of payment if aided by other circumstances, which, taken with it, would furnish ground for a reasonable inference of payment, but, standing alone and the inference of payment contraveneɗ by positive testimony, it is wholly insufficient. (p. 48).

Error to Circuit Court, Wayne County.

Action by J. F. York, Adm'r &c., against Railway officials and Employee's Accident Association. Judgment for plaintiff and defendants bring error.

*Reversed.*

CAMPBELL, HOLT & CAMPBELL, for appellants.

JAMES T. CLARK and SIMMS & ENSLOW, for appellee.

POFFENBARGER, JUDGE:

This is a writ of error to a judgment of the circuit court of Wayne County, for the sum of three hundred and fifty dollars in favor of J. F. York, adm'r of Thomas Henry, deceased, against the Railway Officials and Accident Association, a corporation organized and existing under the laws of Indiana. The proceeding was by notice under chapter 58, the notice setting out the policy of the insurance in full. The defendant filed a plea thereto, denying its liability and setting forth as the ground of its non-liability the failure of the intestate to pay the premium on the policy issued to him or any part thereof, and averring that the term of insurance was for one year, the premium, $42.00, payable in five equal installments of $8.40 each payable monthly beginning on the — day of March, 1899, and that in default of payment of any one of said installments the insured forfeited his rights under the policy and the rights of the beneficiary thereunder, unless the policy should be reinstated by tendering payment of the premium in default at the home office, and that the insured, Thomas Henry, did not pay any of the installments at the time specified nor at any time, that the policy thereby became void and was never reinstated by a tender of the payment of the premium or installments or any of them nor by the acceptance of any payments by the company. The

plaintiff filed a replication to this plea averring that the premium had been paid according to the terms of the policy and issue was thereon joined. A trial by jury was had resulting in a verdict of three hundred and fifty dollars for the plaintiff, the amount of the face of the policy. The defendant moved to set aside the verdict as being contrary to the law and the evidence but the court overruled the motion and rendered judgment upon the verdict, the defendant taking two bills of exceptions, No. 1 setting forth the evidence in the case and No. 2 a notice which was introduced and read to the jury by the plaintiff over the objection of the defendant.

It is not contended that the plaintiff had any right to recover if the premium on the policy of insurance was not paid and the sole question in the case is whether there was sufficient evidence to warrant the jury in finding that the premium was paid. The facts relating to the premium are as follows: Instead of paying the premium or any part thereof at the time the policy was issued the insured gave the insurance company what is termed a paymaster's order for the entire amount of the premium to be paid in monthly installments of $8.40, out of his wages for the months of February, March, April and May, 1899, respectively, as to the first four installments and as to the fifth it was agreed that if the first, second, third and fourth should be paid when due the fifth installment should not be collected. The insured was a freight brakeman in the employ of the Norfolk & Western Railway Company and said order was directed to the paymaster of said railway company. It contained the following clause: "I agree that failure to deduct any of the above installments by said paymaster, from any cause is at my risk, and if any installment be not deducted as above provided for, all my rights and the rights of my beneficiary under said policy issued to me shall be void. I hereby waive for myself and my beneficiary under said policy any notice of the payment or non-payment of any installments provided for, and I further agree that in case of default upon any of the above installments, the same may be deducted from my wages in any succeeding month, at the option of said association, but such deduction shall only reinstate me from the date of such deduction and for the insurance period covered by it." The first installment was not taken out of the wages for the month of February for the reason that Henry's wages for that month as freight brakeman amounted to

but eight dollars and thirty-three cents, lacking a few cents of being enough to pay it.  In that month he was promoted to the position of conductor, and earned eighty-four dollars and seventy cents as conductor for the same month.  By an oversight on the part of the paymaster, none of the installments were deducted, according to his testimony, although the insured earned money thereafter and until the time of his death as follows: March, seventy-two dollars and ninety cents; April, one hundred and ten dollars and forty-five cents; May, forty-three dollars and twenty-five cents; June, fifty-five dollars and twelve cents; July, fifty-five dollars and sixty-eight cents; August, fifty-eight dollars and eighty-three cents; September, ninety-two dollars and twenty-five cents; October, eighty-nine dollars and twenty cents; November, six dollars and fifty cents.  The paymaster testified that the order was filed with him about March 1, 1899, and then says: "The first installment was not collected because he had not earned sufficient wages as brakeman, under which occupation he was insured.  We did not know at that time nor until after his policy was voided by failure of paying the installments, that he was on the roll as conductor."  He further testified that neither he nor the railroad company had paid the defendant or any one for it any part of the wages of the intestate and that no deductions from said wages had been made at any time on account of said order.  Charles A. Luse, chief clerk of the recording department of the Insurance Company, testified that on the 9th day of May, 1899, he filled out and enclosed in an envelope properly addressed to Thomas Henry at Ceredo, West Virginia, the post office address given in his application for insurance, what is called lapse notice No. 23493 and after stamping the same with the proper amount of postage deposited it in the post office at Indianapolis.  The envelope had a return card printed on it but it was never returned.  The notice was to the effect that the order had not been collected by reason of the name of the insured not appearing on the rolls.  It further informed him what to do in order to reinstate his policy and notified him that whatever the cause of the lapsing of the policy might be it could only be made good by his being reinstated by the association.  It also requested the insured to write full information on the back of the notice why payment was not made when due and said: "If any mistake has been made it will enable us to adjust the matter."  The only evidence relating to this

notice is as to its contents and the fact that it was sent from Indianapolis by mail. The paymaster of the railroad company testified that all of Henry's wages for the months of February, March, April, May, June, July, August and September were paid to him between the 20th and 30th of the month following each month in which the wages were earned and that at the time of his death there was due him for the month of October eighty-nine dollars and twenty cents and for the month of November six dollars and fifty cents, which amounts were paid to J. F. York, April 6, 1900. The administrator testified that he received the wages for October and November and that Henry at the time of his death had in his possession the railway company's check for forty-four dollars, one for ninety-two dollars and a third one for four dollars and ninety cents and that he thought the ninety-two dollar check was for wages earned in June and the others for different months from March until the time he was killed.

The notice set out in defendant's bill of exception No. 2 is as follows:

"Norfolk and Western Railway Co.
"*Office of Vice-President and General Manager,*
"Roanoke, Va., September 6, 1898.
"Circular No. 13.

"*To all concerned:*

"Effective October 1, 1898, the Railway Officials and Employes Accident Association, of Indianapolis, Ind., will have the exclusive right of soliciting accident insurance from employes of this Company, and deductions from pay rolls for insurance premiums, will only be made in favor of the Association named.

"In return for this privilege employes will secure insurance at a material reduction in comparison with that charged by other accident insurance companies.

"Employes, preferring to insure with other companies, will be at liberty to do so, but will be required to arrange for the payment of premiums outside of the railway company's accounts.

"J. L. Barr,
"*Vice-President and General Manager.*"

The evidence in relation to this was that it was posted on the

bulletin board of the engine house at Kenova and that, to the best of the witness's recollection, the notice was put up before Henry took out his policy of insurance.

While all the direct evidence in the case relating to the question of payment is that no part of the premium ever was paid, counsel for defendant in error insist that the jury was warranted in finding that the premium was paid for the following reasons: First, the paymaster's order was an absolute assignment of money due to the assured from the railroad company, called the agent of the insurance company, the money being in the hands of the collecting agent, and the principal having agreed to accept the assignment, thereby making the arrangement more than a mere order upon the company for the payment of the money. Second, the defendant having taken such an assignment and it having never been returned to the assured, the burden is upon the defendant to show that it did not collect the money and the evidence adduced by the defendant upon that question is insufficient, the paymaster who testified that the company did not keep out any part of Henry's wages having also represented to the insurance company that Henry was not on the pay rolls of the company and afterwards admitted in his testimony that he had made a mistake and that Henry was on the pay rolls for a large amount during all the time he was in the employ of the company and while the insurance was in force, this being contradictory. The paymaster was bound to know that Henry was on the roll, and, granting that Henry received the lapse notice, he knew the reason assigned therein for failure to deduct the premium from his wages was false, and that notice having stated that if any mistake was made, the company would adjust the matter, he had the right to believe that the mistake would be corrected without any action upon his part and to rely upon the duty of the insurance company and the railroad company to make the correction, he being without fault in the matter. In connection with this it is urged that the checks found in Henry's possession, one of which was for only four dollars and ninety cents, offered reasonable ground for belief on the part of the jury that the premium had been deducted. Third, the written assignment was in lieu of payment and it being shown that the assured placed in the hands of the railroad company sufficient money to pay the premium and that the assignment was never surrendered the

jury had the right to presume independently of any other testimony that the premium was paid. Fourth, although the assignment of wages provided that failure to deduct any of the installments by the pay master for any cause was at Henry's risk and that if any of the installments were not deducted all his rights under the policy should be void, this provision was subject to modification by agreement between the parties that the railway company would deduct from Henry's wages the amount directed to be deducted, it being insisted that this agreement of the railway company to make the deduction and its agreement as collecting agent of the insurance company abrogated the clause of the order stating that if the deductions were not made the policy should be void.

While the brief for defendant in error proceeds upon the theory that the railroad company was the collector of the insurance company, it does not indicate the particular ground upon which the contention is based. The order itself was the railroad company's only authority for deducting the premium installments from Henry's wages. It was drawn by Henry, delivered to an agent of the insurance company and accepted by the railroad company. It contains certain stipulations to which all are parties so far as they relate to them. One stipulation was that if for any reason, be it a mistake of the paymaster or any other, the deduction should not be made all Henry's rights under the policy should be forfeited. Whatever the relation created by the order between the insurance company and the railroad company may be, this was a positive and express agreement between Henry and the insurance company. The policy made the application of the insured a part of it. It was further provided in the application that the paymaster's order should be a part of the contract. Hence, the contract itself provided that the premium should be paid in installments of eight dollars and forty cents and that the first payment should keep the insurance in force two months, the second installment two months, the third installment three months, and the fourth installment five months in their successive order, making twelve months for the four installments, the contract providing that if these four were paid the fifth should not be collected, and it was agreed by the insured that any failure from any cause to deduct any of the installments should result in the forfeiture of all his rights under the policy while any installment re-

mained unpaid.  Granting that the railroad company was in a very limited sense the agent of the insurance company it was competent for the insurance company and the insured to provide by their contract that the insured should take the risk of the failure of the railroad company to deduct the premium from his wages.  It was also competent for them to make the railroad company the agent of the insured and by providing that the risk of the failure of the company to make the deduction should be upon the insured it would seem that to that extent the railroad company was the agent of Henry and not of the insurance company.  Standing thus between the two parties to the contract of insurance there is no reason why it should not sustain the relation of an agent of one of the parties for certain purposes and of the other party for certain other purposes. Had the deductions been made according to the order every thing required by the contract to be done on the part of the insured would have been accomplished.  The contract made it his duty to see that that was done.  If it had been done then the railroad company would have immediately become the debtor of the insurance company.  The contract does not provide that the railroad company should transmit to the home office of the insurance company the premiums deducted from wages but only that it should deduct the premium from the wages of the employe.  By so doing the railroad company would become the debtor of the insurance company and it is difficult to see any of the elements of agency between the railroad company and the insurance in the situation of the parties or provisions of the contract.  There is no provision by which the railroad company was authorized to make any collection of premiums otherwise than by deduction from the wages of its employes in its hands. It was not an agent in the sense that policy holders in the insurance company, whether employes or not, could pay their premiums to the railroad company in any other way than by deduction from wages due from the company.  It was not the business of the railroad company to collect premiums generally for the insurance company.  Its relations to the insurance company and the insured were determined and fixed by the special contract among all the parties and there is nothing in that contract from which it can be inferred that the railroad company owed any greater duty to one of the parties than to the other or was any more the agent of one than of the other.

From the order itself as well as the notice posted at the engine-house it clearly appears that the railroad company was acting in the premises merely for the accommodation of the insurance company and its employes. There is nothing to indicate that any advantage accrued to the railroad company from the arrangement. The notice furnishes no ground for the claim that the railroad company was the agent of the insurance company. It simply notifies the employes that the agents of the insurance company have the exclusive right of soliciting accident insurance among them and that deductions from pay rolls for insurance premiums will only be made in favor of the defendant company, but that employes preferring to insure with other companies will be at liberty to do so but without the privilege of arranging for payment of premiums through the railway company's accounts. Hence, the exclusive right of soliciting and the notice itself means nothing more than that the company will allow deductions from pay rolls for insurance premiums in favor of that company and no other. The reason of this is apparent. It would be very inconvenient for the railroad company to allow assignments from wages in favor of any and all insurance companies and thus endanger itself with liability on account thereof by reason of the keeping of numerous accounts and increasing the possibility and probability of mistakes and other adventitious circumstances which might entail loss upon the company. The arrangement, therefore, whereby all the employes of the road might arrange for the payment out of their wages of insurance premiums to one company has the appearance of reasonableness and there is nothing in it to indicate any thing more on the part of the railroad company than a mere accommodation arrangement involving no liability upon the company in favor of the insured except that it shall pay the premium to the company if deducted. There is a clause which provides that in case of failure to deduct the payment at the time provided in the order it may be deducted from the wages of any succeeding month at the option of the association but such deduction should only have the effect of re-instating the insured from the date thereof for the insurance period covered thereby. This gives the insurance company power to enforce the contract it is true, but this clause, at the same time, preserves to the company the forfeiture of the rights of the insured until such re-instatement takes place and, furthermore, the enforcement of it

is expressly made optional with the insurance company. It may thus reinstate or not at its pleasure.

In the first clause of the paymaster's order this assignment is said to be "In lieu of payments provided in my application for accident insurance, &c." From this it is argued that the assignment of wages must be held to be a payment of the premium. In other words, Henry having drawn the order against his wages in favor of the insurance company and the railroad company having accepted the order, so far as Henry was concerned, the transaction amounted to payment of the premium. As to this *Hornbrook* v. *Lucas*, 24 W. Va. 496, is cited. All that was held in that case is that the taking by a land-lord of the negotiable note of his tenant for the rent due suspended the right of distress. It was further determined and held' that the taking of such note did not amount to a satisfaction of the debt, it not having been expressly agreed between the parties that the notes were given and received in payment and satisfaction of the debt. The order under consideration here recites that it is given "in lieu of payment" but does not expressly state that it is to operate between the parties as payment. On the contrary it expressly provides that if there is any failure from any cause to make the deductions from the wages provided for therein the policy shall be void. Furthermore this order is drawn upon wages that had not been earned at the time the order was made. It was dated in January, 1899, and provided that the payment should be made out of the wages for February, March, April and May of that year. Taking this in connection with the express provision that the insurance should not be in force except upon payment of the premium, contained in the order itself, it is impossible to construe the language "in lieu of payments" to be an express agreement that the insurance company will look to the railroad company on account of these unearned wages for its premium, put his insurance in force and keep it in force, and thus relieve the insured from the payment of any premium, he having the right to quit work before a dollar of it should be earned and put in the hands of the company. That language can only be made into such an agreement by construction. In construing it the whole instrument must be taken together. Taking it all together it certainly does not and cannot result in such an unreasonable and inconsistent conclusion. The insured assigned part of his wages "in lieu of payments."

On its face this language imports an admission of non-payment rather than payment. The order is an arrangement substituted for payment but that arrangement must be taken all together. The assignment was not accepted as payment. It does not purport to be a payment but only an arrangement which, if carried out according to its terms, will result in payment as expressly agreed in the order, that if, by reason of failure from any cause, it does not so result then the policy is to be void. That is all that can be said for it and that is the solemn agreement of the parties thereto.

Upon the authority of *Stevenson* v. *Kyle*, 42 W. Va. 229, it is urged that because the decedent was in the employ of the company and before his death had earned sufficient money to pay the premium and that money was in the hands of the railway company the assignment was valid, and, to that extent, a payment of the premium. There is no doubt about the validity of the assignment. The railway company could have deducted the premium from the wages. The order was complete authority for that. If it had made the deduction, taken out the money and held it for the insurance company, it would have been a sufficient payment, for that would have been in accordance with the agreement expressed in the order. But in entering into that agreement both parties looked forward to, and provided for, the very contingency which happened, namely, that through some mistake or accident the money might not in fact be deducted, and provided, in that case, that the order should not amount to payment. How this express agreement can be laid aside and ignored is nowhere indicated in the brief for the defendant in error. *Rumsey* v. *Laidley*, 34 W. Va. 721, also cited in this connection is not in point at all. It was there decided that the holder of collateral securities by his negligence and refusal to enforce collection of the same became liable to the debtor for the amount of his loss by reason of such failure. Had the contract of assignment of these collateral securities provided that in such case of negligence the holder should not be liable but that the loss should fall upon the assignor, the court would undoubtedly have given that provision of the contract force and, in doing so, would have been compelled to say that the loss fell upon the debtor and not upon the creditor. *Girard Ins. Co.* v. *Mutual Life Ins. Co.*, 97 Pa. 15, was a case in which the insurance company had declared the policy for-

feited while it had in its hands dividends belonging to the policy holder more than sufficient to pay the premium, and it also appeared from the evidence in the case that the insured had been in the habit of applying his dividends to the payment of the premium. That case bears no sort of resemblance to this for there the company had in its own hands money belonging to the insured and not an order upon some other person for the premium with the condition or clause in it expressly making the policy void if, for any reason, default was made in the payment of the order. Moreover, in that case, the company by its former dealing with the insured and permitting the application of the dividends to the payment of the premium had waived the conditions of the policy in respect to payment of the premium. This case shows no deviation whatever on the part of the insurance company from the conditions and stipulations contained in the policy. On the contrary it notified the insured that the premium had not been paid and reminded him of the provision of the contract for re-instating his insurance. The notice having been mailed and no circumstances appearing tending to show that the insured did not receive, the presumption is that he did receive it, but that is immaterial for in giving the order the insured expressly waived notice of the payment or non-payment of any of the installments. The sending of the notice is adverted to here only for the purpose of showing that the insurance company probably notified the insured that it was holding him to a strict compliance with the terms of the contract, rather than waiving any of those terms.

It has been held in a great many cases that a provision in an insurance policy respecting the mode of payment of premium may be waived and such waiver may be shown by the previous conduct of the parties. By accepting a note instead of requiring cash as stipulated in the policy the company waives that condition and the note amounts to payment. The same is true of the acceptance of a check in lieu of cash. 19 Am. & Eng. Ency. Law (2d Ed.) 48. But there is no such waiver when there is an express agreement that the note or check shall not be regarded as payment and that in case of non-payment of the note at maturity the policy shall lapse. In such case the parties are bound by a contract and their rights are determined thereby. 16 Am. Eng. Ency. Law, (2d. Ed.) 859. Where a premium note is given and the policy provides that on failure of the in-

sured to pay such note at maturity the policy lapses and no notice or demand is necessary to its cancellation on account of non-payment of the note.  19 Am. & Eng. Ency. Law, (2d. Ed.) 47.  "A stipulation in an insurance policy that the company shall not be liable for any loss or damage sustained by the insured while a note given for the premium remains due and unpaid is one which the company has the right to make, and, if inserted without fraud, misrepresentation, or concealment, is binding upon the insured.  The nonpayment of the note does not extinguish the policy, but defeats the right of the holder to recover for any loss occurring during its discontinuance.  The subsequent payment of the note revives the policy for the remainder of the term, but for a loss occurring during the default no recovery can be had, notwithstanding the subsequent payment."  16 Am. Eng. Ency. Law (2d Ed.) 861.  These general principles amply cover this case and clearly show that the position taken by the attorneys for the defendant in error is wholly untenable.  But there are cases in which questions almost exactly like the one involved here have been decided and they are in perfect harmony with the general principles just adverted to.

In *Landis* v. *Ins. Co.*, 6 In. App. Rep. 502, the insured had given an order containing substantially the provision found in the paymaster's order in this case, but, like the insured here, he drew the full amount of his wages leaving nothing with which to satisfy the order and failed to pay the premium and it was held that the acceptance of the order by the railroad company did not amount to payment of the premium and that the insured could not recover.  The case of *McMahon* v. *Ins. Co.*, 77 Ia. 229, was almost exactly like this case.  The railroad company received the order; placed it on file as a voucher and paid the first installment.  When the second installment became due the company refused to pay it on the ground that the insured was no longer in that company's employment, but, in point of fact, he was in its employment though on another division and drew all his wages for that month.  Afterwards he wrote the insurance company to cancel his policy but neither the policy nor the paymaster's order was returned to him.  The installment paid gave him insurance from April 21st, until June 20th.  Had the payment for June been deducted it would have kept his insurance alive until August 21st.  He was killed on the 18th day of July.  The court held that the order on

the railroad company did not amount to payment, that by draw-ing his wages in June he had notice of the nonpayment of the installment for that month, that the defendant's right to claim forfeiture was not waived by its failure to cancel the policy and return the order and that the plaintiff was not entitled to re-cover.    In the orders given in these cases it was not specifically agreed by the insured that failure to deduct in accordance therewith should be at his risk, nor did it contain any express waiver of notice of non-payment, as does the order in this case. But in lieu thereof it contains this clause, "All claims for in-juries effected during any period for which its respective premium has not been actually paid shall be forfeited to the company."   Hence, it is clear that the court in so holding went much farther than it is necessary to go here in reaching the same conclusion as to the liability of the company.   In *Bane* v. *Ins. Co.,* 85 Ky. 677, the order was about the same as the one in the Iowa case.   It directed payment out of the wages for January, February, March and April.   Deductions were made in the months of January and February but the insured failed to work in March and April and resumed work in May and was injured in the last named month when the company owed him sufficient money to have paid the balance due on the premium. The court held that the order was not an assignment of twenty dollars to be paid out of any money due the insured but only of specific amounts out of the wages for specified months, that the drawee had no right to pay the balance out of the wages of any other month, that the insurance company was not obliged to return the order and notify him that the contract of insurance was at an end in order to escape liability, and that failure of the insured to pay the installments terminated the liability of the company.   *Lyon* v. *Ins. Co.,* 55 Mich. 147, was a case in which the order and policy were like those in the other cases referred to and unlike the order in this case in that it was less specific and contained no express waiver of notice and no stipulation such as we have here as to the risk relating to failure to deduct the installments from the wages.   The order was retained and no notice given of the nonpayment and on the ground that the insurance company by failure to give such notice and return the order waived the forfeiture of the policy, the court held that a recovery might be had by the beneficiary named in the policy. The Kentucky court distinguished this case from *Bane* v. *Ins.*

*Co.* upon the ground that in it the insured had earned sufficient wages to pay the premium in the months out of the wages of which the payments were to be made. But it is clearly apparent that the two cases are distinguishable from the case under consideration here by reason of express agreements contained in the policy here which do not appear in the policies sued upon in those cases, but the general principles upon which all those decisions are based applied to the facts in this case demonstrate the impossibility of a recovery here in the absence of proof of actual payment of the premium.

Upon the question of actual payment the only direct evidence in the case is that the premium was not paid. The pay master of the railroad company testifies that he did not deduct any of the premium installments from the wages of the insured and also that he did pay to Mr. Henry his wages for the months of February, March, April, May, June, July, August and September, 1899, and that he paid his wages for the months of October and November, 1899, to J. F. York, the administrator of the decedent. Chas. A. Luse, an officer of the insurance company, testifies that no part of the premium was ever paid. Now it is insisted that, despite this positive testimony, the jury was warranted in finding that the premium had been deducted, from the mere fact that Norfolk and Western Railway Company checks for forty-four dollars, ninety-two dollars and four dollars and ninety cents were found in the possession of the decedent, it appearing that none of these checks correspond in amount with the wages earned by Henry for any month, as will be seen by reference to the statement hereinbefore given. One of them being for only four dollars and ninety cents it is apparent that that is payment for only a part of the wages for some month, but for what month and how the balance was paid does not appear. It is equally clear that a deduction from the wages of any month of any or all of the premium installments would not leave that result. There is no amount of wages for any month a deduction from which of any one or more of the installments will leave four dollars and ninety cents. The mere fact that the checks so found vary in amount from the wages earned, while competent evidence in connection with other facts which would make it reasonably certain that the deduction had been made, is insufficient, standing alone as it does, to raise a presumption of payment. It could only furnish a basis

for a strained and most uncertain inference. If no evidence had been adduced by the insurance company in contradiction of such inference then it might be urged with some reason that the verdict could stand, but the presumption would arise in that event, more from the silence of the defendant and of the railroad company, whose agents are living and in a position to know whether payment was made, than from the discrepancy between the checks and the wages. Such silence and the discrepancy taken together would afford reasonable ground for the presumption of payment. But there has been no such silence. The agents of the two companies have testified. Had the plaintiff so desired he could have cross-examined them and ascertained the reason for the discrepancy and any other facts in connection with the payment of the wages, but he did not do so and has no right to complain that this testimony is not so full and satisfactory as it might otherwise have been or as it could have been made. It is direct and unequivocal as to the main question. There are numerous cases in which the court held certain facts to be insufficient to raise the presumption of payment or to support a verdict of payment, but none has been found in which the facts were very similar to those of this case. In *Fleming* v. *Evans,* 9 Kan. App. Rep. 858, the defendant proved that he had mailed a draft to the plaintiff at Chicago without giving in the address the street or number of the building. There was a verdict and judgment for the defendant and the appellate court held that the jury was not warranted in drawing an inference of payment from the fact that the draft was so mailed and reversed the judgment and granted a new trial. The fact established in that case more clearly indicated payment than the one set up here. The burden was upon the plaintiff to show payment of the premium and while circumstantial evidence would be sufficient to sustain the allegation of payment the circumstances relied upon must be such as to indicate with reasonable certainty that payment was made. The fact relied upon here does not do that. Hence, the court below erred in refusing to set aside the verdict and award a new trial. Therefore, the judgment must be reversed, a new trial granted and the case remanded.

*Reversed.*