## Lillie McDaniel, Appellee, v. Continental Casualty Company, Appellant.

### Gen. No. 7,923.

1. INSURANCE—*construction of policy insuring employee and order upon employer for payment of premium with secret contract of insurer and employer touching same subject matter.* Where at the time of the execution of a policy insuring an employee against death by accidental means while in the employer's service, and of an order by the employee upon the employer authorizing a monthly deduction from the employee's wages equal to the premium for such insurance and payment thereof to the insurer, the employer being therein designated the agent of the insured for such purpose, there existed a valid contract between the insurer and the employer whereby the employer agreed to accept such orders from its employees, deduct the amounts called for from wages then due and remit same to the insurer within 30 days, and the insurer agreed, in consideration of the foregoing undertaking of the employer, to release it from any liability consequent upon any default in making and remitting such deduction from wages, such contract with the employer, although unknown to the insured, entered into and became a part of the insurance contract for the purpose of determining the liability of the insurer for a loss occurring after it was alleged the policy had lapsed because of a failure on the part of the employer to deduct and remit a premium.

2. INSURANCE—*when employer agent of insured and insurer as to deductions from wages to pay premiums on policy held by employee.* Where an insurance company procured, coincidently with the execution of a policy insuring an employee against death by accidental means while in the service of the employer, an order constituting the insured's employer his agent to make monthly deductions from the insured's wages for the payment of premiums on such policy, when there was then existing, unknown to the insured, a valid contract between the insurer and the employer wherein the employer agreed to accept such orders from its employees, make the indicated deductions from accrued wages and remit the same periodically to the insurer, which on its part undertook to release the employer from liability arising out of any default in making such deductions or remittances, the effect of such agreements was to make the employer the agent of both parties, thereby precluding the insurer from resisting a claim under such policy upon the ground that it has lapsed through the neg-

lect of the employer to make and remit a deduction for payment of a premium.

3. INSURANCE—*necessity for notice to insured employee of failure of employer to honor order to deduct amount of premium from wages and pay same to insurer, prior to claiming lapse of policy for nonpayment.* Where an insurance company procured, coincidently with the execution of a policy insuring an employee against death by accidental means while in the service of the employer, an order constituting the insured's employer his agent to make monthly deductions from the insured's wages for the payment of premiums on such policy, when there was then existing, unknown to the insured, a valid contract between the insurer and the employer wherein the employer agreed to accept such orders from its employees, make the indicated deductions from accrued wages and remit the same periodically to the insurer, which on its part undertook to release the employer from liability arising out of any default in making such deductions or remittances, it was a prerequisite to the right of the insurer to cancel its policy on the ground that the employer had failed to deduct and remit a premium that it notify the insured of such default, the insured having a right to assume performance of the employer's agreement.

4. INSURANCE—*neglect of employer to deduct and pay over to insurer from wages of employee premium on policy, pursuant to agreement with insurer, as basis for claim of lapse of insurance for nonpayment of premium.* Where an insurance company procured, coincidently with the execution of a policy insuring an employee against death by accidental means while in the service of the employer, an order constituting the insured's employer his agent to make monthly deductions from the insured's wages for the payment of premiums on such policy, when there was then existing, unknown to the insured, a valid contract between the insurer and the employer wherein the employer agreed to accept such orders from its employees, make the indicated deductions from accrued wages and remit the same periodically to the insurer, which on its part undertook to release the employer from liability arising out of any default in making such deductions or remittances, and thereafter the insurer resists a claim based upon a loss under such policy upon the ground that the insurance had lapsed because of the employer's failure to deduct and remit a premium, the court will not inquire to what extent the default was due to the stipulation releasing the employer from liability in such a case, but will leave the parties thereto where their neglect or bad faith has placed them.

5. INSURANCE—*inaccuracies in order of employee to employer to pay insurance premiums out of wages as affecting right of insurer*

McDaniel v. Continental Casualty Co., 240 Ill. App. 535.

*to claim lapse of policy due to failure of employer to make deductions as agreed.* Where the legal effect of an order constituting the insured's employer his agent to deduct monthly from his accrued wages the amount of the current premium upon a policy insuring the employee against death by accidental means while in the service of the employer, and to remit same to the insurer, in view of a pre-existing secret agreement between the insurer and the employer touching the same subject matter, was an absolute undertaking upon the part of the employer to make and remit such deductions if the employee had sufficient presently due wages, no defense to a claim based upon a loss under such policy occurring after an alleged lapse of the insurance because of a failure of the employer to deduct and remit a premium when due, is afforded by proof of inaccuracies in the order upon the employer in respect of the nature and place of work of the insured employee, the order presumably having been drawn by the insurer and having been accepted by the employer.

6. Insurance—*liability of insurer under policy where loss occurs after lapse due to breach of employer's agreement to deduct premiums from wages and pay same to insurer, where employee prevents performance by drawing out all of wages due.* Where the legal effect of an order constituting the insured's employer his agent to deduct monthly from his accrued wages the amount of the current premium upon a policy insuring the employee against death by accidental means while in the service of the employer and to remit the same to the insurer, in view of a pre-existing secret agreement between the insurer and the employer touching the same subject matter, was an absolute undertaking upon the part of the employer to make and remit such deductions if the employee had sufficient presently due wages, no defense to a claim based upon a loss under such policy occurring after an alleged lapse of the insurance because of a failure of the employer to deduct and remit a premium when due, is afforded by proof that the employee prevented the making of such deduction by drawing out all of his wages, where it does not appear that the insured was notified of a cancellation of the policy for non-payment of premium.

7. Payment—*absolute undertaking of employer, by agreement with insurer, to deduct premiums on employee's insurance policy and remit same to insurer, as assignment of funds in employer's hands operative as payment.* Where an employer undertook absolutely, by agreement with the insurer, to honor an order by its employee authorizing a monthly deduction from the employee's accrued wages of the amount of the premiums on the employee's accident insurance policy, to make the indicated deductions and

remit the same to the insurer in payment of premiums as they came due, such agreement and order effected an assignment to the insurer of funds in the hands of the employer for the payment of such premiums, operating as a payment in fact of premiums as they came due.

Appeal by defendant from the Circuit Court of Coles county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed April 15, 1926.

GEORGE C. BLISS, and CRAIG & CRAIG, for appellant.

RAYMOND G. REAL, for appellee.

MR. JUSTICE CROW delivered the opinion of the court.

Russell McDaniel, on June 29, 1924, died as the result of personal bodily injury caused by an external, violent and purely accidental event. An indemnity policy had been issued to him against such injury, by appellant, on May 17, 1924, for the principal sum of $2,000. The annual premium for the policy was $23.60, payable as hereinafter stated. He was at the time in the employ of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company at Mattoon, and had been since September, 1922, and so remained to the time of his death. The indemnity was payable to him or to his mother, Lillie McDaniel, the appellee.

The premium was payable in six instalments—four of $3.96 each, and two of $3.90 each, from the wages of the insured for the months of June to November, 1924, inclusive. To provide for the payment of the premiums, he signed a paymaster's order: "To the paymaster of my employer." Substantially, it stated: "I have this day made application to the Continental Casualty Company (hereinafter called the Company) for a policy of insurance. This order is given to provide for the payment of the premium thereon which you are authorized and requested to deduct from my wages in instalments as hereinafter designated, pay to the company for me, and charge against my pay

account for services rendered or to be rendered, to my employer on whom this order is drawn. If for any reason whatever you fail to make deduction of any installment from my wages for the period hereinafter designated for that purpose, you are further authorized and requested at the option of the Company to deduct and pay the defaulted installment from any of my future wages. I understand and agree as to the duration of my said insurance: (1) That my said policy after taking effect so continues until the expiration of the period hereinafter designated for the deduction of the last installment of any premium unless I sooner cease to be in the service of my present employer, or unless default be made in the payment of any prior installment, in either of which events my insurance shall at once terminate without notice except as it may be continued in force by reason of premium previously paid; (2) that the payment of each installment in which the said premium is payable shall continue my policy in force for a period of two months, all such periods to be computed successively from the date of the policy; (3) that the paymaster is my agent for the purpose of deducting these installments from my wages, and his action in that regard is entirely at my risk; (4) that should my policy lapse at any time by reason of non-payment of any instalment and premium afterwards be paid, then such payment shall reinstate my policy only as provided therein. I also agree that if my wages are paid to me more often than once a month, then each installment, instead of being deducted and paid from a month's wages as herein provided, is to be deducted and paid from that part of the month's wages first payable to me.''

On the other side of the paper on which the above is printed appears the following, the first paragraph framed in heavy black lines, followed by the remainder of the order;

"Paymaster's order No. 6172711, Agent, Notice: To avoid errors, and for the benefit of the Paymaster, write applicant's name here, VERY PLAINLY, giving correct spelling and first name in full.

### "RUSSELL McDANIEL

"I understand that no agent of the company has any authority or power to waive or change any of the printed provisions hereof. My employer is Big Four R. R. Division or Department Head, E. J. Buckbee (Not foreman in charge of sub-department) Foreman or Sub-Official and A. D. Barrett, G. F. My occupation is machinist helper. I am employed at Mattoon, Ill. My time is kept at Indianapolis, Ind. Division St. Louis and Shop or Section No. 233 (Always give number for Section or shop men). Dated at Mattoon the 17th day of May, 1924.

"Signature *Russell McDaniel*
Witness, *C. E. Nelson.*    Agent's name, *C. E. Nelson.*"

At the time of the issuance of the policy and of the foregoing paymaster's order, a contract between appellant and the Cleveland, Cincinnati, Chicago & St. Louis Railway Company was in force, entered into by them January 1, 1914, with regard to the issuance of accident policies for employees for the railroad company. It consists of 11 paragraphs, in addition to the introductory part, and was executed by the railroad company by its president and by the insurance company by its vice-president. We shall not set them out in full, but state some of the provisions deemed pertinent to the disposition of the question for decision.

It recites that the insurance company is authorized to issue policies of insurance against death and injury by accident, and desiring to solicit contracts for such insurance from employees of the railroad company, and in consideration of one dollar by each to the other and of the mutual covenants contained in the contract, the railroad company permits the insurance company

to solicit such contracts subject to the regulations of the officers of the railroad company. The policies may contain provisions for health and life, and the contract entered into in its scope shall include all divisions of the railroad company.

"Second: The railroad company will accept delivery by the insurance company to railroad company of the properly executed orders, assignments or requests of its employes in favor of the insurance company for premiums on such policies, and will, in pursuance thereof, set apart for the insurance company, the amounts called for therein if any there shall be to the credit of such employe upon the pay rolls of the railroad company; and the railroad company shall within thirty (30) days thereafter remit the amount thereof to the insurance company.

"Third: The insurance company shall pay to the railroad company its entire expense for the service heretofore described in a sum equivalent to a per cent to be agreed upon from time to time of all amounts paid by the railroad company to the insurance company under the orders of employes aforesaid; which sum may be deducted by the railroad company in its discretion at the time of its payment to the insurance company.

"Fourth: The insurance company, in consideration of the voluntary recognition by the railroad company of the orders or requests against or assignments of wages herein referred to agrees to waive all claims against the railroad company by reason of its failure for any cause to make any payments as herein provided, and to release the railroad company from any liability therefor. In the event any other party or parties shall attempt to enforce the collection of any of said amounts or any part thereof due or owing to said employes from the railroad company, by means of any attachment, garnishments, or similar process, or by means of any suit or action at law or in equity,

the insurance company agrees to intervene in or assume the defense of any such proceeding and to assert or defend any rights claimed by it by virtue of said order, request or assignment and save the railroad company harmless therefrom, and to abide by the final determination of such proceeding or suit.

"Fifth: The insurance company further agrees to fully and wholly indemnify the railroad company against all claims for loss or expense made against the railroad company by any persons whomsoever, on account of the nonpayment of the railroad company to the insurance company of any sums in pursuance of orders or requests against the assignments of wages made upon the railroad company in favor of the insurance company.

"Sixth: The insurance company further agrees that if the railroad company, after having made any payment or payments to the insurance company, shall nevertheless be compelled to pay the full amount of the wages from which deductions have been made or any part thereof to or upon the demand of any employe, the insurance company will thereupon at once repay to the railroad company the amount so paid to it, which the railroad company has been compelled to pay as set out above.

"Seventh: The insurance company further agrees to indemnify and save harmless the railroad company from and against all claims and demands made against the railroad company by the solicitors or other agents or employees of the insurance company arising from or growing out of injuries received or losses sustained by said agents or employees while on or about the tracks and premises of the railroad company, otherwise than as passengers, whether said injury or loss is caused by the negligence of the railroad company or its employees or otherwise."

The eighth, ninth and tenth clauses of the agreement provide that the insurance company shall submit to the

railroad company for its approval all forms to be employed by the insurance company before putting them into use, and the railroad company agrees that in exercising its right with regard to the forms of order or assignment it will be guided by reasonable regard for its protection and the interest of its employees; the insurance company agrees when requested by the railroad company to give it all information in its possession as to accidents to employees when on duty, as to policies issued and settlements made with employees and other information required by the railroad company for its purpose under the contract.

It was stipulated at the trial that all defenses available to defendants upon proper pleas well pleaded might be made under the general issue. After plaintiff had introduced all her evidence, defendant presented its motion for a directed verdict which was denied. Thereupon defendant offered no evidence and by counsel said: "We stand on our motion and rest our case on the plaintiff's evidence." The jury returned a verdict for the sum of $2,043.06. Motions for new trial and in arrest of judgment having been denied, judgment was rendered for the amount of the verdict and defendant appeals. Thirty-two errors are assigned on the record.

The facts not being controverted, only their legal effect is presented by this appeal. If they, when so considered, do not authorize a verdict, the court erred in refusing to direct it for defendant. While the system of carrying insurance employed in this case is not new, no decided case in all respects like it has been cited by counsel for either party. In all cases nearly like the present the legal effect of the order as payment of premiums, under the circumstances presented by each case, has been the crucial question. In that connection, the conduct of the parties with respect to it has received the consideration of the courts in determining its legal effect. In some of the cases, the

decision was adverse to plaintiff because it did not appear there was any intercompany agreement to deliver, or forward, or pay the amounts in the order to the insurer. But in this case we think the distinguishing mark is the agreement entered into between the insurer and the railroad company. It relates to that subject only. The case nearest in principle to this is *Lyons v. Travelers Ins. Co.*, 55 Mich. 141, to be noticed more fully hereafter. In that case, a recovery was allowed because of a construction of the contract arising out of a custom or practice of the insurance company and the railroad company with regard to the order. The custom was held in that case to be the equivalent in legal effect of a contract.

The application, policy and paymaster's order were known parts of the contract of insurance, regulating the rights and duties of the insured and the insurer. In the application and use of the order, the insurer and the railroad company by express contract had left nothing to conjecture, implication or custom. It is claimed by no one that McDaniel knew anything of this agreement. At the time he signed the application and the paymaster's order the contract between the insurer and the railroad company was in force. We conclude, therefore, that the contract of insurance upon which the plaintiff may now rely consists not only of the elements known by the insurer and the insured, but that the private, and to the insured, unknown, element, as matter of good faith and fair dealing toward him, was a part of it. It would seem to be more appropriately a part of it, because more certain than a custom obtaining between the companies.

The intercompany contract is material in view of appellant's contention as to the effect of clause (3) of the paymaster's order "(3) that the paymaster is my agent for the purpose of deducting those installments from my wages, and his action in that regard is entirely at my risk."

The second paragraph of the intercompany agreement is: .

"The railroad company will accept delivery by the insurance company to the railroad company of the properly executed orders, assignments or requests of its employes in favor of the insurance company for premiums on such policies, and will in pursuance thereof, set apart for the insurance company, the amount called for therein, if any there shall be to the credit of such employe upon the pay rolls of the railroad company; and the railroad company shall within thirty (30) days thereafter remit the amount thereof to the insurance company."

In this connection, the third paragraph provides for payment to the railroad company "its entire expense for the service" described, in a sum equivalent to a per cent to be agreed upon of all amounts paid by the railroad company to the insurance company, under the orders of employees, the sum to be deducted at discretion. The stipulation upon which the cause was tried is that the insurance company paid the railroad company 10 per cent of each pay for the service. It need not be said that this was a service by the railroad company for the insurance company, paid for out of its funds devoted to the payment of premiums, and therefore for the benefit of the insured.

Counsel for appellant contends that the judgment must be reversed because the particular division or department of insured's employment with the railroad company was not correctly described in the paymaster's order. It described his employment as "Big Four R. R., occupation, machinist's helper at Mattoon, time kept at Indianapolis, on St. Louis Division, Section A. Shop number 233, Division or Department Head, E. J. Buckbee; Foreman or Sub-Official, A. D. Barrett, G. F." The practice in carrying out the contract between the insurance company and the railroad company was for the insurance company to send to

the railroad company a "paymaster's return list," prepared by the insurance company, in accordance with the statement contained in the paymaster's order. That was done in this case and contained the name of Russell McDaniel, with the description of his employment as stated, with the number 6,172,711, being the policy and order number, and the amount due $3.95. T. F. Henry was the paymaster and had been for several years previous to the time in question. When he received the return list, June 11, 1924, the *first* pay in June, he made thereon the notation, against the name of Russell McDaniel, "No Record," and returned it to the insurer. No notice of default was sent by the insurer to Russell McDaniel. The paymaster sent the check to McDaniel and it was cashed.

We think, upon a careful consideration of the case made by the undisputed facts, the judgment of the circuit court was right. This conclusion is rested upon two grounds: (1) the defendant's contract with the railroad company, its agent to accept the instalments of wages of the insured and pay them to the insurer; (2) before defendant could successfully defend against the claim, it should have notified the insured of the default in the payment of the premium, if from a consideration of the admitted facts, and as matter of law, there was a default.

The paymaster's order recited that it was given to provide for payment of the premium on the policy to be issued upon the application to which it was attached. He had the right to rely upon his employer deducting the wages due him, paying them to the insurer for him, and charge such payments against his account. He did not know, it is true, when he gave the order that it and all such orders had been accepted by a written contract between the insurer and his employer based upon a valuable consideration. He designated his employer as his agent and agreed that its action in making the deduction was at his risk. This was

a printed agreement. But the contract between the two companies tended to minimize the care the acceptor of the order ought to have exercised. If he had known he was dealing with an agent of the insurer, guarded by stipulations for its protection as against him, he would not, probably, as a prudent person, have trusted the paymaster so implicitly. Good faith on the part of the insurer is required for the protection of its policies. Every contract of insurance will be construed most favorably to the insured. Forfeitures are never favored.

The fourth and fifth paragraphs relate to controversies arising out of such assignments or orders. By the former the insurance company agreed to waive all claims against the railroad company "by reason of its failure *for any cause* to make any payments as herein provided, *and to release* the railroad company from *any liability therefor.*" Let it be kept in mind the insurer was then dealing with a prospective agent of McDaniel, and, as the record shows with many more, the number not being stated. That condition is not reconcilable with good faith by the supposed agent or its principal, the insurer. That paragraph promises also to defend the railroad company—to intervene in or assume the defense—if proceedings in attachment, garnishment or similar process, are instituted against it for the recovery of wages so covered by the order; not only so, but agrees to save it harmless and abide the result. If it was not understood by the parties to that contract that the agreed payments were to be deducted from the employee's wages, there was no occasion for those stipulations. If to be deducted, the purpose of deduction, in the unambiguous language of the order, was payment of the premium.

The fifth is more insidious because it directly tends to lessen the watchfulness of the insured's declared agent. It guarantees against the consequences of neglect to him, its principal. The insurer agrees to

indemnify the railroad company against loss or expense on account of the nonpayment of the wages assigned to take care of the premiums and keep a policy depending on it alive. The tendency of the agreement is in furtherance of the interest of the two companies with the interest of the insured as a secondary consideration. Under such circumstances courts will not stop to inquire to what extent the agent has been influenced, if at all, by stipulated immunity from the consequences of a breach of the agreement. They will leave the parties where neglect or bad faith places them.

It is said by counsel for appellant that the only authority to make deductions from the wages of the insured was the paymaster's order and that he was the agent of the insured. This is true only so far as the literal form of the order is concerned. Its purpose reached further. By the intercompany agreement the employer of the insured by a valid agreement with the insurer had agreed to make the deduction and transmit it to the insurer. It cannot rightfully be said this was only for the benefit of the insurer. Certainly the relation here established is that on one hand of the insurer as principal and the employer as its agent, in the operation of deducting and paying to the insurer the premiums, which must, in the nature of the transaction, on the other hand, supplement the agreement between the insured as a principal and the employer as his agent. Clearly, then, the employer was the agent of both parties, though unknown to one of them, the insured, its employee. It would seem that to state the facts is to manifest the absurdity if not the impolicy of such a dual situation, to the creation of which the insured never assented and from which he had no opportunity to dissent. It was said of a like situation by Judge Folger in *Whited v. Germania Fire Ins. Co.*, 76 N. Y. 415, 32 Am. Rep. 330:

"No man can serve two masters. If the procurer
of the insurance is to be deemed the agent of the in-
sured, and Harmon is to be deemed such procurer,
he may not be taken into the service of the insurer as
its agent also; or, if he is so taken, the insurer must
be bound by his acts and words when he stands in its
place and moves and speaks as one having authority
from it; and *pro hac vice,* at least, he does then right-
fully put off his agency for the insured and put on
that of the insurer.  *  *  *  Nor will it (the law),
hold the plaintiff so strictly to the contract he made as
to permit the defendant to ignore it and take his agent
as its agent, and yet make him suffer for all the short-
comings of that person while acting between them and·
while under authority to act for it."

The question of agency in the same capacity was not
before the court, but the principle underlying it is of
universal application.  The evidence discloses that
McDaniel was continuously in the employ of the rail-
road company and at the time of his death more money
had been earned and was in its hands than was neces-
sary to pay the premium.  This was paid to plaintiff
long after insured's death.  It is stipulated that Mc-
Daniel was not employed in the exact department de-
scribed.  But he was employed in the railroad shops
at Mattoon.  He was employed as a carman helper
and did not, it is true, work under Barrett.  The op-
erative words of the paymaster's order, including the
stipulation as to conditions of nonpayment, are on the
first page of a printed strip of paper.  On the reverse
side of the paper, at the top, and before the continua-
tion of the order proper, are the printed words:

"Agent Notice: To avoid errors, and for the bene-
fit of the paymaster, write applicant's name VERY
PLAINLY, giving correct spelling and first name in
full."  These words are followed by the name, *Russell
McDaniel,* in the center of the paper, written by the
insurance agent.  The remainder of the order follows

continuing the line from the preceding page. There was no other McDaniel in the employ at that place. If there had been there might be some force to the contention that the particular occupation does not describe this McDaniel, for the contention only comes to that. Besides, there is no qualification or limitation in the writing itself in this respect, but the undertaking is absolute. The railroad company undertook to deduct the wages of Russell McDaniel.

As to the materiality of the statement of the particular place of employment in the order, counsel contend that it was a matter of convenience in ascertaining the person giving the order. The argument is that ·without it "the paymaster would have to search all the different payrolls for each employee and would take all his time deducting insurance premiums instead of performing his ordinary duties." We think a sufficient reply to all of that is that the railroad company approved the form of order. It may be assumed the insurer wrote it. But under the intercompany agreement it was to be satisfactory to the railroad company. Yet the only caution explicitly looking towards convenience of the paymaster, his safety, or avoidance of ambiguity, is that at the top of the second page of the order. If that was thought sufficient for the convenience and benefit of the paymaster when drafted and approved by the parties to it, the defendant ought not to be heard to complain now when confronted with liability. It must be understood they intended to protect every one using the order. The railroad company by its agreement is exempted from the liability of responding to the insurer in any demand for its failure to deduct the premium. But nothing of the spirit of justice or fairness suggests any valid reason for defendant enjoying a like immunity for the negligence of its agent. The argument *ab inconvenienti* has no legitimate application to the facts. The

railroad company is not making that defense, and we think it does not lie with defendant to make it.

Appellant contends that the failure of the paymaster to make the deduction was due to the insured's fault. Counsel say in their brief:

"By drawing his full pay for the first half of June, insured had knowledge that the first installment was not deducted. His failure to leave with the paymaster of the railroad company the amount of the first premium installment precludes recovery." Apparently a sufficient reply to the contention is that there was no failure on his part in that respect.

In support of the legal contention, among other cases are cited: *Lacy v. Continental Casualty Co.*, 170 Ill. App. 527; *Geddes v. Ann Arbor Railroad Employees' Relief Ass'n*, 178 Mich. 486; *McMahon v. Travelers Ins. Co.*, 77 Ia. 229.

The *Lacy* case arose out of a contract of insurance issued upon a paymaster's order similar to the one in this case. The insured in that case was a dining car waiter with uncertain employment with the Pullman Company. In the opinion it is said he drew $17.37 which was all the wages he had earned during the calendar month of April, 1907, and earned no more that month. May 1, 1907, he went out on a trip and was killed May 11. The "paymaster's return list" was sent to the Pullman Company April 22, and returned to the insurance company with truthful notation, "not enough time." The policy was thereupon marked "Lapsed." The court says in the opinion at page 534:

"A few days before the Casualty Company forwarded the paymaster's order to the Pullman Company, Lacy drew from the Pullman Company all of the wages he had *earned* for April, and worked no more for it during that month; so that by his own act he had made it impossible for the Pullman Company to comply with its order to pay the first insurance installment out of his April earnings." Earlier in the

opinion, addressing himself to the obligation of the paymaster's order, Judge McSurely said that legally the Pullman Company became liable for the instalment as soon as the employee had earned his monthly wages, but it took about a week to make up all the accounts (about 3,000) and it could not be known just what day any particular account would be made up, and the amount of the instalment placed to the credit of the insurance company.

In the *McMahon* case, the portion of the policy to which importance was attached was: The insurance company in consideration of the warranties in the application for this policy, and of an order (for the moneys therein specified) on C. B. & Q. R. R. Co., does hereby insure John McMahon, etc. The order was sent to the railroad company but not formally accepted, but retained by it as a voucher. Afterwards defendant sent to the railroad company a "deduction list" for the month of June, showing five dollars due from McMahon's wages. This was returned to the defendant with the statement McMahon was not employed by the railroad company. The policy was not canceled nor the order returned to McMahon. He was employed by the company though on a different division. He drew all his earnings for the month of June. On the 29th of that month he wrote to the general agent of defendant: "I have left John Smith's gang. You will please cancel my accident policy as I don't care to keep it any longer." On the 18th of July he was killed. The court, of course, reversed the judgment in favor of plaintiff. Several reasons or grounds for the conclusion are stated in the opinion. One alone was sufficient in that case, and everything else said in the opinion was unnecessary. In the second division of the opinion it is said:

"It further appears that he directed the cancellation of the policy less than three weeks before, and his acceptance of *all his earnings* for June was evidence that

he intended to terminate it, and considered it of no further force." It is said in this division of the opinion that it does not appear when defendant learned of the failure of the railroad company to make the second payment. But it appears that McMahon drew all his wages for the month of June at the time the railroad company usually paid such wages, and that therefore he knew the second payment was not made and could not be prejudiced by failure of defendant to give him actual notice of the fact.

In the *Geddes* case, the application contained an order authorizing the railroad company to deduct from his wages the monthly premium "required for by insurance," under the policy applied for, "as such premium shall from time to time become due and payable." It was further provided that the insurance should be good only while he remained in the employ of the railroad company and while the monthly premium should be punctually and fully paid to the insurer as required by the conditions of the policy. The deduction sheets containing his name with others were sent to the employer. Through some error in the auditing department the sheet was returned with the notation "no time" opposite his name. After several such returns, the insurer dropped his name from the list assuming, though erroneously, he had left the employ of the railroad company. In the statement preceding the opinion from which the foregoing is abridged, it is said: "We are unable to discover from an examination of the application, the policy or the by-laws of the defendant, that the railroad was under any contract or obligation to deduct the assessments from the wages of the insured and forward them to the secretary of the defendant. The contract between the insured and defendant does not make it the duty of defendant or its officers to see that the deductions are made." By a divided court of five to three, it was held there was an authorization to the railroad com-

pany to deduct premiums, but defendant was given no interest therein, and the fact he had drawn full pay was notice to him that his premium was not paid.

In *York v. Accident Association*, 51 W. Va. 38, 45, much relied on by appellant, the court say: "The contract does not provide that the railroad company should transmit to the home office of the insurance company the premiums deducted from wages, but only that it should deduct the premium from the wages of the employe. By so doing, the railroad company would become the debtor of the insurance company and it is difficult to see any of the elements of agency between the railroad company and the insurance company in the situation of the parties or provisions of the contract."

The foregoing cases are the strongest cited in favor of appellant's contention. No case with all the facts present in this has been cited by either party. *Lyon v. Travelers Ins. Co. of Hartford, Connecticut*, 55 Mich. 141, is cited by counsel for appellee as supporting his contention. In that case the premiums on the insurance policy were provided for by a paymaster's order. The insured was in the employ of a railroad company. The order was for $27, to be paid by instalments of $6.75 each for the months of April, May and June, 1883. By the opinion it appears that the defendant, after receiving the order and soon after its date, deposited it with the railway company in accordance with a custom existing in such cases between them, "and it was the practice of the defendant, early in each month, to send to the railway company a statement of the amount due from the employees of such company by reason of insurance, which the said railway company stopped against the pay of such employees about the middle of the month and paid it to the defendant." Lyon had money due him for March, April and May in excess of the amount due on the order. Defendant rendered statements of the amount

McDaniel v. Continental Casualty Co., 240 Ill. App. 535.

due on the order on the first of April, May, June, July and August. The first two were paid from the March and April wages, paying the insurance to July 3. The third instalment was not paid, though the railway company had money in its hands subject to the order. Lyon was killed seven days before the expiration of the third insurance period. Defendant, as in this case, did not notify Lyon of the nonpayment of the third instalment, nor cancel the policy, nor return the order to him. The first notice there, as in this case, that the premium had not been paid was when inquiry was made of the company as to proofs of death. In response to that request, it informed the beneficiary the policy was not in force because of nonpayment of premiums.

The Supreme Court reversing the judgment in favor of the insurance company, by Judge Sherwood, said:

"I think the facts in the case show clearly a transfer of the premium for the third period to the Insurance Company, and Mark Lyon received the consideration therefor in the policy issued to him. The assignment is in writing, and independent of the order given on the Railway Company for the amount. The order is but a notice to the Railway Company of the transfer, and voucher for it when paid. The assignment is complete without it, and the Insurance Company could, when the instalment became due in May, have brought suit for it against the Railway Company. The assignment, though made at the time the policy issued, did not take effect until the money for the premium for the particular period was earned by the insured. The May instalment was earned and in the hands of the Railway Company, in accordance with its rules and customs in dealing with the defendant in such cases, and its practice in this particular case, when the same became due. *Hall v. Steel,* 68 Ill. 231; *Mandeville v. Welch,* 5 Wheat. 286, 23 Am.

Law. Reg. 189. It is true, nonpayment of the premium for any one of the periods suspends the enforcement of the policy; but the insured, in a case like this, when he has *provided for the payment* when due, and the premium made is in possession of the defendant *or under its control,* payment will be deemed to have been made, until the insured is notified by the defendant to the contrary. A failure of the Railway Company to make payment when the amount assigned became due will not be presumed."

After discussing another phase of the case, the opinion continues:

"Payment of the premiums will be presumed and *deemed* to have been made out of the fund provided and assigned to the company for that purpose, until notice of non-payment is given to the insured."

*Johnson v. Fidelity & Casualty Company,* 184 Mich. 406, followed the *Lyon* case and affirmed a judgment for plaintiff under similar conditions as to payment of premiums by paymaster's order. There the insured left the employ of the company October 23, 1911, dying November 21, 1911. His wages for October would be due November 15. Before the latter date the insurer was notified by the employer that the insured had left his employ. At the time of leaving the employ, the money for his wages was in the hands of the employer and so remained until January 4, 1912, when it was paid to the plaintiff, as in this case. The court held the premiums had been paid. It was further held that decision was not in conflict with *Geddes v. Ann Arbor Railroad Employees' Relief Ass'n,* 178 Mich. 486, relied on by appellant in this case. It should be observed that in the *Geddes* case the court say:

"We are unable to discover from an examination of the application, the policy, or the by-laws of defendant that the railroad company was under any contract or obligation to deduct the assessment from the

wages of the insured and forward them to the secretary of the defendant.''

The absence of that essential element materially distinguishes that case from this now under consideration. It is further weakened as support for defendant's case by the dissent of three of the justices, and by the further fact that the judgment in the *Johnson* case was by an undivided court.

In *National Benefit Ass'n v. Jackson,* 114 Ill. 533, a policy of accident insurance was procured, the insured giving in payment of the premium two orders on the paymaster of the railroad company by which he was employed. One out of his March time was paid. The second was unpaid, and returned to the insurance company by the paymaster with the statement Jackson had ''no time,'' which was a mistake of the paymaster. The insistence by defendant was that there was no liability on the policy which had been delivered to the insured. The court, by Mr. Justice Craig, said:

''The association had the right, if it saw proper, to waive cash payment and accept in lieu of cash the orders on the railroad company, and if these orders were taken as cash, although the association failed to collect one of them, that fact cannot be held to defeat the policy.''

Speaking of the ''binding receipt'' which it was stated in the application was conclusive evidence the premiums had been paid, and which contained the same number as the policy, he said:

''This receipt never would have been given unless the association treated and accepted the orders as cash. Indeed, all the facts bearing upon the question point to the fact the orders were accepted as cash, and the association having accepted them as cash, it must be bound by that act. At all events the association having accepted them as cash, when one of them was returned by the railroad company unpaid, good faith

required that Jackson should be notified of the non-payment of the order, and the association could not, on any principle of fair dealing, claim a forfeiture of the policy for non-payment without giving Jackson notice, which was not done.''

The basic principle of this holding is that, having received the order as cash, a synonym for payment, when it developed, if it did, that it was unpaid, the insurer was bound unless the insured was notified of the nonpayment of the order. Stated in another way it was payment of the premium unless and until he was notified that it was unpaid, so that he might protect himself against default.

Counsel say the paymaster's order did not operate as an assignment of the funds in the hands of the employer. Why not? On its face it is stated that it was given to provide for the premium on the policy of insurance for which he had that day made application to Continental Casualty Company. It authorized and requested the employer to deduct the several sums from his wages, pay them to the insurance company, and charge the payments against his account. It was delivered to the insurance company, which was to get the money as a consideration for the insurance. It was regarded by the insurer as the equivalent of money, and as payment for the insurance, because the policy under the terms became effectual from the date of the order and application.

But if it be conceded the verbiage of the order is not sufficient to constitute an assignment, as appellant contends it is not irrelevant to notice how the insurer and the employer regarded it. In clause 2 of the intercompany contract, the railroad company covenanted with the insurer that when orders, assignments or requests of its employees, in favor of the insurance company for payment of premiums, should be delivered to it, it would accept such orders and would, in pursuance thereof, set apart for the insurer the

amounts therein, and would remit them to the insurer within 30 days thereafter. Term the transaction whatever one will, it was regarded by the insured, the insurer and the insured's employer, as a provision for the payment of the premiums of the policy. He provided for the payment and the insurer accepted it as a "provision for the payment," and not as a provisional payment, as where promissory notes are sometimes given for the premium.

The undisputed facts in the light of the law applicable to them in our opinion disclose a payment of the premium on the policy. We think that the railroad company was the agent of the insurance company for the purpose of paying the premium and that when it failed to deliver to the insurer the premium, the default was not that of McDaniel.

The judgment of the circuit court is affirmed.

*Affirmed.*